**In re ICS CYBERNETICS, INC., Debtor.**

**Bankruptcy No. 88–00478.**

United States Bankruptcy Court, N.D. New York.

Nov. 20, 1989.

See also, Bkrtcy., 107 B.R. 821.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y., for debtor; Mary Lannon Fangio, of counsel.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for Creditors' Committee; Garry M. Graber, of counsel.

Melvin & Melvin, Syracuse, N.Y., for Computer Leasing, Inc.; Louis Levine, of counsel.

Kent, Ridge & Crawford, Jacksonville, Fla., for Florida Nat. Bank; George E. Ridge, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has consolidated for decision two motions involving separate creditors but each involving ICS Cybernetics, Inc. ("Debtor") which raise common issues of law, to wit: whether "actual use" by the Debtor of personal property subject to an unexpired lease is necessary to warrant allowance of an administrative expense priority pursuant to 11 U.S.C. § 503(b)(1)(A), and how "benefit" to the Debtor's estate is determined. Both motions present questions of first impression for the Court.

MOTION I. FLORIDA NATIONAL BANK'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT UNEXPIRED EQUIPMENT LEASE AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSES

Debtor filed its voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 ("Code") on March 31, 1988. Florida National Bank ("FNB") commenced this contested matter by filing the instant motion with the Court on January 9, 1989 seeking an order compelling the Debtor to: 1) assume or reject its lease with FNB for certain computer equipment; and if rejected, that shipping and reassembly costs be paid as an administrative expense by Debtor; while if assumed, that all defaults be cured by Debtor and adequate assurance of performance be provided by a deposit in certified funds equal to the value of the equipment; 2) that Debtor immediately pay post-petition rental due as an administrative expense; and 3) that Debtor either pass through rentals received on its sublease of equipment or that said rentals be placed into an escrow account in trust for FNB. Debtor, on January 24, 1989, served a cross-motion requesting the Court's authorization to reject the FNB lease and also requesting an evidentiary hearing on FNB's administrative expense claim. The Official Committee of Creditors Holding Unsecured Claims ("Creditors' Committee") in its Response dated March 6, 1989 opposed FNB's motion.

An evidentiary hearing was held on March 15, 1989 in Utica, New York for the purpose of determining whether to allow FNB an administrative expense for Debtor's alleged use and occupancy of the leased equipment from the filing of the petition to rejection. FNB, Debtor and the Creditors' Committee were represented at the hearing. The parties orally agreed at

the March 15, 1989 hearing that February 14, 1989 would be deemed to be the effective date of Debtor's rejection of its lease with FNB and that Debtor would submit an order to that effect. To date no such order has been submitted.

## FINDINGS OF FACT

Debtor and FNB entered into a twelve month Lease Agreement ("lease") on or about February 12, 1988 pursuant to which Debtor leased several computer components from FNB in exchange for monthly rental payments by Debtor in the amount of $15,900.00. The lease commenced on March 1, 1988 and the last payment to FNB was due on February 1, 1989. The equipment subject to the lease as set forth in the lease executed by Debtor and FNB was:

    3081 Processor # 21057
    3082 Processor Controller # 21057
    3087 Coolant Distribution Unit # 21057
    3089 Power Unit # 41248
    3278 Display Console # 71W06

Debtor actually possessed this equipment before it entered into the lease with FNB in February, 1988. It is undisputed that Debtor subleased the same FNB equipment from IBM Credit Corporation ("ICC") during the period May, 1986 to February, 1988. FNB at all times held title to the equipment during Debtor's sublease from ICC and thereafter during its lease directly to Debtor.

Certain components subject to the lease were sold, traded, subleased or stripped of parts by the Debtor pre-petition. During the pre-petition period, Debtor admits that it traded the 3089 Power Unit and sold channels 8–16 and 16–24 from the 3082 Processor Controller. Debtor asserts that it did not receive the 3278 Display Console. Since FNB offers no evidence regarding its pre or post-petition disposition, the Court cannot find that Debtor possessed the Display Console for the purpose of the instant administrative expense analysis. Debtor does not dispute that it received the 3087 Coolant Distribution Unit pursuant to its lease from FNB, but as neither party offered evidence of its disposition, the Court will treat it as having been possessed and stored by the Debtor for the purpose of the following analysis. Debtor also does not dispute that it leased a memory segment 16–24 to Continental Data Corporation pre-petition. It is not clear from the evidence presented, however, whether the leased memory segment was subject to the lease with FNB. The remainder of the equipment which consisted of the 3081 Processor and the remains of the 3082 Processor Controller were stored by the Debtor at TRW in Illinois during the entire period of the lease.

FNB received payment in full from Debtor for the first month under the lease but no payments thereafter. The Debtor filed its petition pursuant to Chapter 11 of the Code on March 31, 1988 and FNB became aware of Debtor's filing during April, 1988.

## ARGUMENTS

FNB seeks the immediate payment of post-petition rentals due under its lease with the Debtor, as well as the cost of shipping and reassembly of the leased computer equipment as administrative expenses under Code § 503(b)(1)(A). It also seeks the rentals that Debtor is receiving from its subleases of the subject equipment to be either passed through or placed into an escrow account in trust for FNB.

FNB asserts that the rental payments for the period between the filing of Debtor's petition and rejection of the lease by the Debtor amounting to $157,262.50 should be deemed an administrative expense. FNB also asserts that the Debtor's retention of the equipment during the period of the lease, together with Debtor's eleven month delay in either assuming or rejecting the lease, deprived FNB of both rent and alternative use and constitutes actual use of the equipment by the Debtor. It argues that the Debtor's intended use of the equipment was as inventory to be available for sub-leasing to its downstream end-users and that, therefore, the storage of the equipment was not merely possession but actual use of the equipment by the Debtor.

Debtor admits that it kept some of the equipment in storage but argues that since it did not receive any actual benefit from that equipment in the post-petition period, then no administrative priority should be granted. It asserts alternatively that if an administrative priority is granted, the amount should be based upon the reasonable value of its use and occupancy rather than the rent reserved in the lease and that the evidence of value presented at the hearing demonstrated that the rent provided in the lease was not the proper measure of this administrative claim. Debtor further argues that since FNB knew of Debtor's filing before Debtor itself became aware of the pre-petition executory lease with FNB, FNB could have moved to compel Debtor to assume or reject the lease and that Debtor's inaction with respect to rejection of the lease is due to FNB's own failure to exercise its option under the Code.

## DISCUSSION

Code § 503(b)(1)(A) provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate ..." Preservation of the estate, however, should not be strictly construed. 3 COLLIER ON BANKRUPTCY ¶ 503.04[1] (15th ed. 1989). While preservation is implicitly for the benefit of creditors, preservation may also be a means to other ends such as continuation of the business. *Id.* The threshold requirement, that the expense incurred be "actual" and "necessary" to the preservation of the estate, however, indicates Congress' intent that priority status be awarded parsimoniously to unsecured creditors who are also a party to an executory contract with the debtor over other unsecured creditors. It would be contrary to the purpose of the statute to saddle debtors with burdensome post-petition obligations or give preferential treatment to select creditors by creating a broad category of administrative expenses. *In re Grant Broadcasting of Philadelphia*, 71 B.R. 891, 897 (Bankr.E.D.Pa.1987). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 221 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6181 (under Chapter 11 it is essential to free the

debtor of pre-petition debts so that additional cash flow is provided to meet current operating expenses). Thus, given the plain language and the policy behind Code § 503(b)(1)(A), the Court finds the better view concerning administrative expenses to be that embraced by *Broadcast Corp. v. Broadfoot*, 54 B.R. 606 (N.D.Ga.1985), *aff'd sub nom. In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir. 1986), and its progeny, *see, e.g., Burlington Northern Railroad Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 788 F.2d 560, 562 (9th Cir.1986), rather than the position espoused by the court in *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982) and urged here by FNB.

This more narrow interpretation requires actual use of the creditor's property by the debtor, *S & W Holding Co. v. Kuriansky*, 317 F.2d 666, 667 (2d Cir.1963); *TN Communications Corp. v. Adwar Video Corp. (In re Adwar Video Corp.)*, 38 B.R. 628, 629 (Bankr.S.D.N.Y.1984), thereby conferring a concrete benefit on the estate before a claim is allowable as an administrative expense. *Broadcast, supra* 54 B.R. at 613; *In re O.P.M. Leasing Services, Inc.*, 56 B.R. 678, 683 (Bankr.S.D.N.Y.1986); *In re Dant & Russell*, 853 F.2d 700 (9th Cir.1988). Accordingly, the mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense. *Broadcast, supra* at 611. The court's administrative expense inquiry centers upon whether the estate has received an actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.

In the instant case, FNB seeks an administrative expense priority regarding the subject equipment which was either sold, traded, subleased to another party or stripped for parts pre-petition, as well as the portion of the equipment stored by Debtor for the period between the filing of its petition and rejection of the lease with FNB. The burden of establishing entitlement to priority status rests with the claim-

ant. *In re Chateaugay Corp.*, 102 B.R. 335 (Bankr.S.D.N.Y.1989). FNB has not provided a sufficient basis for granting administrative expense priority with respect to that equipment sold or traded by Debtor pre-petition. Generally, only those benefits which the trustee or debtor-in-possession receives under the lease itself give rise to an administrative expense.

The Sixth Circuit, in *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking Service Inc.)*, 851 F.2d 159, 161–62 (6th Cir.1988) (citing *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987)), articulated the general rule that in order to qualify for administrative expense status a claimant must show that the debt both (1) arose from a transaction with the debtor-in-possession rather than the preceding entity (or that debtor-in-possession received consideration from claimant); and (2) directly benefitted the estate. Consideration to the estate exists only where debtor-in-possession induces post-petition performance and performance is rendered to the estate.

In *United Trucking*, damage occurred to the leased property through its misuse by the debtor both pre and post-petition and a portion of the leased property was stolen from the debtor pre-petition. Considering the above rule, the court reasoned that the administrative expense "should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement." *Id.* at 162. Upon finding that the post-petition misuse of the equipment resulting in damage was performed by and benefitted the estate, the court held that the post-petition damages, therefore, qualified as an administrative expense. *Id.* at 164. With regard to the leased property which was stolen from debtor pre-petition, the court stated that because the stolen property was never in the debtor's possession post-petition, it could not have benefitted the estate. The court further reasoned that, the fact that the debtor continued to pay rent on the stolen property after filing was "irrelevant" and that any claims of the lessor with regard to the stolen property must have arisen pre-petition. *Id.* at 163.

The reasoning in *United Trucking* is applicable to the circumstances regarding the pre-petition disposition of the leased equipment in the case at bar. Here, FNB has not met its burden of showing, with respect to the equipment sold, traded or stripped for parts pre-petition, that the Debtor accepted the benefits of the pre-petition transactions or that the pre-petition conversion of the leased equipment directly benefitted the estate. Also, any use of the property or consideration for those transactions occurred pre-petition. While the benefit derived from equipment leased by Debtor to Continental Data Corporation between the date of filing and rejection may be deemed an administrative expense, *see Computer Leasing Inc.* discussion *infra*, FNB has failed to establish to the Court's satisfaction, whether the equipment leased to Continental Data Corporation was, in fact, part of the equipment subject to Debtor's lease with FNB.

■ Having disposed of the subject equipment sold, traded, subleased or stripped pre-petition, the Court turns to the portion of the subject equipment stored by the Debtor from the date of filing to rejection. FNB endeavors to distinguish the business engaged in by the Debtor here, from the nature of the debtor's business in *In re Fred Sanders Co., supra*. There, the debtor was engaged in a business requiring the operation of vans. Sanders, as lessee, leased a number of vans but only actually used a portion of them. FNB asserts that physical operation of the leased equipment is not necessary to establish "actual use", as the Debtor is not engaged in the business of operating the leased equipment, as in *Sanders*, but rather the business of leasing computer equipment. Debtor's intended use, FNB claims, was to have the equipment in inventory and available for lease to Debtor's end-user customers. The Debtor's mere retention of the equipment as available inventory, FNB concludes, is the actual use of the equipment intended by the Debtor.

The Court finds no actual use of the equipment stored in inventory by the Debtor. While the Debtor's business does not

primarily involve the use, that is, the *operation* of computer equipment, the stored equipment here was not actually used any more than the trucks that sat idle in *Sanders.* In each case the leased equipment stands ready for use but is not actually used. Here, FNB's premise that the Debtor's business does not involve the operation of computers, while accurate, does not support its conclusion that Debtor's non-operation of the equipment somehow establishes its "actual use" any more so than the debtor in *Sanders* with respect to its unused vans. The Debtor here is no more engaged in the business of storing leased computers than Sanders' business was engaged in the storage of leased trucks. The keeping of inventory in order to assure availability to potential customers, or as in the instant case, end-users, may be a prudent business practice, but the potential benefit to the estate provided by storage of equipment does not typically rise to the level of actual use. *Broadcast, supra* at 611 (citing *In re Kessler,* 23 B.R. 722, 724 (Bankr.S.D.N.Y. 1982)). Also, to the extent that FNB urges the grant of priority status regardless of actual use of the leased equipment by the Debtor, this Court has chosen, at least as pertains to unexpired leases involving personal property, not to adopt the *Sanders* theory thereby foreclosing relief to FNB.

■ FNB also maintains that it should be granted priority status with respect to the leased equipment due to Debtor's failure to timely assume or reject the lease. FNB argues that the Debtor had the ability to avoid harm to FNB and that there was "simply no justification whatever" for failing to reject or assume the lease for a period of eleven months.

While the Court's finding that FNB's failure to establish actual use of the equipment subject to the lease precludes the grant of an administrative expense priority, the Court will nevertheless address FNB's argument grounded on Code § 365(d)(2). A debtor, under Code § 365(d)(2), need not assume or reject an unexpired lease until the confirmation of a plan, but a creditor may bring a motion to compel the debtor to assume or reject the lease as soon as the

debtor files its petition. FNB admits that it became aware of Debtor's filing sometime during April, 1988, approximately one month after Debtor filed. FNB contacted its counsel at that point but did not move to compel assumption or rejection under Code § 365(d)(2) until January of 1989—nine months later. The fact that Debtor retained possession and precluded alternative use of the stored equipment by FNB for eleven months is a situation which FNB could have resolved by moving under Code § 365(d)(2) to compel the Debtor to either reject or assume the lease. *See Public Service Company of New Hampshire v. New Hampshire Electric Cooperative, Inc. (In re Public Service Co. of New Hampshire),* 884 F.2d 11, 15–16 (1st Cir. 1989); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1216 (7th Cir.1984); *Grant Broadcasting, supra* 71 B.R. at 898. Had FNB not chosen to "sit on its rights" for nine months, the harm it claims to have suffered as a result of Debtor's delay in rejecting the lease would have been diminished accordingly.

The Court must deny FNB's administrative expense claim since it failed to show; 1) actual use of any of the equipment subject to the lease which was stored by the Debtor post-petition, or 2) that a sublease of any of the equipment subject to the lease existed for the relevant period.

## MOTION II. COMPUTER LEASING INC.'S MOTION FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSES

Computer Leasing Inc. ("CLI"), as lessor of certain computer equipment to Debtor as lessee, has filed the instant motion for an Order pursuant to Code § 503(b)(1)(A) for allowance and immediate payment of rent due on an unexpired lease as an administrative expense. Debtor and the Creditors' Committee oppose the motion on the ground that no basis exists for the grant of priority status to CLI. The motion was orally argued in Syracuse, New York on April 11, 1989 after which the parties submitted memos of law to the Court. In Debtor's Memorandum of Law and the Creditors' Committee's Response

to CLI's motion, each requests an evidentiary hearing to determine the amount of the benefit, if any, to the estate.

### FINDINGS OF FACT

On August 24, 1987, Debtor and CLI executed a lease agreement ("lease") wherein Debtor leased five pieces of computer equipment from CLI ("CLI equipment") in exchange for a monthly rent of $6,200.00 commencing on September 1, 1987. It is undisputed that Debtor, on September 2, 1987, subleased all of the CLI equipment together with other equipment to Worldwide, Inc. ("Worldwide") for a period of twenty-four months in exchange for a monthly rent of $29,150.00 per month.

Sometime in February or March, 1988 Debtor assigned its Worldwide lease to the Union Bank of Norway ("UBN"). Whether Debtor received any past or present consideration from UBN in exchange for the assignment is not known at this time. Debtor filed its petition pursuant to Chapter 11 of the Code on March 31, 1988.

Worldwide initially paid Debtor, and then UBN, all monthly rental payments due between September, 1987 and March, 1988 and between April, 1988 and December, 1988, respectively. Debtor has commenced an adversary proceeding against UBN *(ICS Cybernetics, Inc. and Official Committee of Creditors Holding Unsecured Claims v. Union Bank of Norway (In re ICS Cybernetics, Inc.),* Adv.Pro. 88–0064 (Bankr.N.D. N.Y. filed July 13, 1988)) to recover, among other things, the payments made to UBN by Worldwide as a preferential transfer.

On January 26, 1989, Debtor rejected both its Worldwide and CLI leases pursuant to an Order of the Court entered on that date. Monthly rental payments of $6,200.00 have accrued under Debtor's lease with CLI between the date Debtor filed its petition (March 31, 1988) and the date of Debtor's rejection of the CLI lease (January 26, 1989). CLI requests administrative expense status and immediate payment of the amount accrued post-petition and pre-rejection totaling $62,000.00.

### ARGUMENTS

CLI contends that Debtor's sub-lease of CLI's equipment to Worldwide in exchange for Worldwide's future stream of lease payments which extended into the period after Debtor had filed its petition amounts to Debtor's use and benefit from CLI's equipment. Debtor's assignment of the Worldwide lease to UBN, CLI claims, created further post-petition benefit for the Debtor to the extent that Debtor's indebtedness was reduced or equity was increased in its own assets as a result of Worldwide's payments to UBN as Debtor's assignee. Also, to the extent that new funds were advanced to Debtor in exchange for the pre-petition assignment, CLI maintains that these funds, in effect, accelerated the rental payments to the Debtor thereby attempting to convert the lease's post-petition assets into pre-petition assets. CLI also contends that Debtor's failure to reject the Worldwide lease until January, 1989 constituted a post-petition ratification of its assignment to UBN and that, therefore, Debtor's post-petition use and benefit from CLI's lease must be presumed. Thus, CLI argues, even if the assignment to UBN is not avoided by Debtor as a preferential transfer, Debtor received a post-petition benefit from its lease with CLI.

CLI claims that the measure of benefit to the Debtor is the fair rental value of the property regardless of Debtor's actual use of the equipment subject to the lease. CLI further asserts that the fair rental value of the equipment is presumptively that which is set forth in its lease with Debtor and that because CLI requires the arrearages from the lease to meet its own "upstream" lease payments, the Court should exercise its discretion in ordering immediate payment by the Debtor to CLI of the rental payments in arrears amounting to $62,000.00.

Debtor asserts that CLI's claim is not allowable as an administrative expense because the Debtor has not received any post-petition benefit from its alleged post-petition use of the CLI equipment. The only benefit it has, Debtor claims, is the poten-

tial benefit if it prevails over its assignee, UBN, on its preference claim, thereby reclaiming the lease payments directly from Worldwide. Potential benefits, Debtor argues, do not warrant administrative expense priority.

Debtor states that, if an administrative expense is granted, the proper measure of the amount for which the Debtor is liable is the reasonable value of the benefit received. Thus, since CLI's equipment was leased along with other equipment to Worldwide, benefit to the estate must be measured by whatever value CLI's equipment had to the entire lease with Worldwide. In that event, Debtor requests a hearing to determine the worth of CLI's equipment if Debtor prevails in its preference proceeding against UBN.

Debtor submits that immediate payment of an administrative expense should be allowed only upon receipt by the Debtor of the actual benefit.

The Committee argues that CLI's claim should not be allowed because Debtor has not received any post-petition, pre-rejection benefit from its alleged use and occupancy. It maintains that Debtor is liable on an administrative claim only for the reasonable value of any benefit received. Because Debtor has not received any post-petition payments from Worldwide nor any consideration from UBN in exchange for the assignment of the Worldwide lease, the Debtor has not been unjustly enriched. The Creditors' Committee agrees with Debtor in the assertion that no administrative expense should be paid by the Debtor until its Plan of Reorganization has been confirmed.

## DISCUSSION

The Court has already stated its adoption, in regard to the FNB motion, of a narrow interpretation of administrative expenses under Code § 503(b)(1)(A) articulated in *Broadcast Corp. of Georgia v. Broadfoot, supra,* which requires actual use of the personalty by the debtor in order to establish benefit to the estate. It will not be reiterated at length here.

■ The Court finds that the Debtor actually used the computer equipment leased by CLI. Actual use need not be physical use by the Debtor. *See American A. & B. Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 125 (2d Cir.1960) (no physical use necessary if benefit conferred on estate). Here, the Debtor's business is not the operation or physical use of computers, but rather the leasing of computer equipment. It typically generates income by subleasing or selling the equipment to "downstream" parties or end-users. Thus, Debtor is "actually using" a piece of equipment in its normal course of business when it has entered into a lease of the equipment with a "downstream" party. Neither of the parties dispute that all of the computer equipment leased from CLI to Debtor was then leased by Debtor to Worldwide. Also undisputed is the fact that the Worldwide lease, together with its stream of future payments, existed from Debtor's date of filing to its date of rejection of the lease with CLI. Debtor's sublease to Worldwide was, therefore, actual use of CLI's equipment to benefit the operation of the Debtor. *Id.* (citing *Dayton Hydraulic Co. v. Felsenthall,* 116 F. 961 (6th Cir.1902)); *In re C.M. Systems, Inc.,* 89 B.R. 947, 950 (Bankr.M.D.Fla.1988). The Court notes here that to restrict the meaning of actual use to actual *physical* use by the Debtor lacks support in both case law and legislative history.

■ Since actual use and benefit to the estate have been established, the Court turns to valuation of that benefit. The amount of the administrative claim is not dependent, contrary to Debtor's claim, upon the particular use to which the asset is put, *Broadcast, supra* 54 B.R. at 611, or the lease term, *Dant & Russell, supra* 853 F.2d at 707, but upon an objective standard that measures the fair and reasonable value of the lease. *Id.* Also, the United States Supreme Court in *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984) (citing *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941)), stated that a debtor's receipt of benefits pursuant to a contract pending

rejection or assumption, obligates the debtor to pay a reasonable value of the services. The value of those services may be what is specified in the lease. *Id.*

The Second Circuit has since declared, in *Farber v. Wards Co., Inc.*, 825 F.2d 684, 689–90 (2d Cir.1987), that a presumption exists that the amount of rent reserved in the lease constitutes a fair and reasonable value, but that the presumption can be rebutted by contrary evidence of reasonable worth which may include the debtor's actual use. The Ninth Circuit articulated the same presumption in *Dant & Russell, supra* 853 F.2d at 707. Debtor's and the Creditors' Committee's position that the rule in the Second Circuit requires that the Court value Debtor's alleged use and occupancy on the basis of other evidence rather than the rent reserved in the lease is a misinterpretation of *Farber* and, therefore, is not adopted by the Court.

■ Two points are clarified by the foregoing case law concerning determination of the amount of an administrative claim. First, that which is appraised by the court is not the profit or benefit netted by the estate due to its particular use of the leased property. Basing the amount of an administrative claim on the pecuniary gain attributable to the particular purpose to which debtor put the property is not only contrary to the Supreme Court's statement in *Bildisco* that the reasonable value of services be paid, but it also provides debtors who would seek to minimize a potential administrative claim with an incentive to act wastefully and promotes a post-petition, "nothing to lose" business attitude on the part of a debtor.

■ Secondly, the yardstick applied to measure the value of the property leased from the creditor is the objective standard of the fair market rental value of the leased property which was used, rather than its subjective value to the debtor. As the underlying purpose of according priority, is the equitable principle of preventing unjust enrichment of the debtor's estate, *see e.g., Arrivabene, supra* 280 F.2d at 126, the debtor is not permitted the actual use of a valuable asset without incurring liability for the fair market rental value of the asset. While value of the property to the debtor may be, depending upon the circumstances, evidence of the leased property's reasonable market rental value, it is not the focus of the valuation inquiry.

The Court finds, therefore, that the amount of CLI's administrative claim will be based upon the reasonable market rental value of the computer equipment subject to the lease between CLI and Debtor. Pursuant to the request by the Creditors' Committee, and informally by the Debtor in its Memoranda of Law, a hearing will be scheduled for the purpose of determining the reasonable rental value of the equipment leased to Debtor, at which the parties may submit relevant evidence. Because valuation of the property must await further factual findings by the Court, the issue of immediate payment of the administrative claim to CLI is not reached here.

Based upon CLI's showing that Debtor's sublease of the CLI equipment to Worldwide was in effect from the date of filing to the date of rejection, the Court finds that Debtor actually used the CLI equipment thereby resulting in Debtor's unjust enrichment and providing the Court with the basis for granting CLI's claim.

Having disposed of FNB's administrative expense claim in its entirety and CLI's administrative expense claim in part, it is hereby

ORDERED:

1. That FNB's motion to compel Debtor's payment of rentals due under a lease of certain computer equipment with Debtor as an administrative expense is denied as to all of the equipment subject to the lease.

2. That CLI's motion for payment of administrative expense is granted to the extent that CLI is allowed an administrative expense priority for the amount of the reasonable market rental value of the equipment subject to its lease with Debtor between the date of filing and date of rejection of the lease.

3. That, pursuant to the Committee's formal, and the Debtor's informal request for a hearing, an evidentiary hearing will

be held before this Court at the United States Courthouse, Utica, New York on *January 11, 1990* at 10:00 AM for the purpose of determining the reasonable market rental value of the CLI equipment between date of filing and date of rejection;

4. That the remainder of the relief sought by CLI is denied without prejudice.