**In re CIS CORPORATION, Continental Information Systems Corporation, et al., Debtors.**

**No. 91 Civ. 6952 (JFK).**

United States District Court,
S.D. New York.

July 8, 1992.

Melvin & Melvin, Syracuse, N.Y. (Roger W. Bradley, of counsel), for claimant/appellant.

Kirkland & Ellis, New York, N.Y. (Edward S. Cowen, of counsel), for debtor/respondent.

## OPINION AND ORDER

KEENAN, District Judge.

### INTRODUCTION

Appellant Communications Satellite Corporation ("COMSAT") appeals from a decision of the United States Bankruptcy Court of the Southern District of New York denying the allowance and immediate payment of an administrative expense. U.S. Bankr., S.D.N.Y. Nos. 89B 10073 (PBA) through 89B 10084 (PBA) inclusive (Prudence Abram, U.S.B.J.). COMSAT requests that this Court reverse the Bankruptcy Court's decision and grant administrative status to the monthly equipment lease payments owed by the debtor, Continental Information Systems Corporation ("CIS"), to COMSAT. For the reasons that follow, the decision of the Bankruptcy Court is affirmed and the request for administrative status is denied.

### BACKGROUND

Appellee CIS, as the original lessor, leased computer equipment to COMSAT for a five-year term beginning on December 1, 1986. In November 1987, COMSAT then subleased a portion of the equipment back to CIS for the remainder of the lease term. The sublease agreement granted CIS the right to sub-sublease the equipment.

CIS sub-subleased the equipment to a third party, Data Hardware, Inc., for a three-year term beginning on May 1, 1988 and ending on April 30, 1991. Data Hardware prepaid the total amount due to CIS under its three-year sub-sublease on or about June 28, 1988. On January 13, 1989, CIS filed a petition for bankruptcy under Chapter 11, but continued making payments on the sublease to COMSAT until December 1989. On June 7, 1991, COMSAT filed a motion in Bankruptcy Court for an order requiring CIS to assume or reject the sublease and granting an expense of administration in the amount of $132,-000.00. This figure represents the amount of the unpaid rent under the sublease for the period between January 1990 and April 1991, the term for which CIS had not paid the rent on the sublease to COMSAT, but for which it was sub-subleasing the equipment to Data Hardware.

After hearing oral argument on COMSAT's motion for the payment of an administrative expense under 11 U.S.C. § 503(b)(1)(A), the Bankruptcy Court denied the motion. The court found that the sublease conferred no benefit on the bankrupt estate of CIS because Data Hardware had prepaid the entire amount owed under the sub-sublease to CIS before CIS filed for bankruptcy. Because the use of the equipment resulted in no positive cash flow and thus conferred no benefit on the bankrupt estate, but only on the pre-petition entity of CIS, the court denied the request for an expense of administration.

### DISCUSSION

Because the instant motion presents a mixed question of law and fact, a de novo standard of review applies. *In re Mader*, 108 B.R. 643, 644 (N.D.Ill.1989); *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988). This appeal hinges on the issue of whether an original lessor confers a benefit on a post-petition estate under 11

U.S.C. § 503(b)(1)(A) when the lessee-debtor subleases the equipment for a term continuing after the debtor's bankruptcy petition to a third party who prepays the lease fee prior to the bankruptcy. The question is whether this prepayment precludes granting administrative expense status on the original sublease of equipment by COMSAT to CIS. If the sub-sublease between CIS and Data Hardware had not been prepaid but had provided for monthly payments from Data Hardware to CIS, the original sublease would be deemed to have conferred a benefit on the estate because the monthly sub-sublease payments would have generated cash for CIS post-petition. *See, e.g, In re C.M. Systems, Inc.*, 86 B.R. 286, 287 (M.D.Fla.1988) (cost of leasing equipment is administrative expense when subleased to generate funds for the estate).

### 1. Equitable Principles of Administrative Expense Status

■ The purpose of granting administrative expense priority in a Chapter 11 context is to give creditors an incentive to continue to conduct business with a bankrupt entity, thus aiding in the debtor's maintenance, preservation and rehabilitation. *Broadcast Corp. of Georgia v. Broadfoot*, 54 B.R. 606, 611 (N.D.Ga.1985), *aff'd sub nom. In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976). To accomplish these goals, Chapter 11 confers higher priority on creditors that continue to perform under executory contracts and unexpired leases than to general unsecured creditors by granting the former administrative expense status. Continued performance on such obligations is not enough, however, because the examination of an administrative expense claim focuses on the actual benefit that such transactions confer on the estate, not the loss sustained by such creditors. *Broadcast*, 54 B.R. at 611.

■ 11 U.S.C. § 503(b)(1)(A) therefore states that such administrative expenses shall include those that are "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." *Id.* Although the section does not fully define "necessary expenses," the phrase "including" is not limiting. *See* 3 Collier on Bankruptcy ¶ 503.04[1] (15th ed. 1989) (administrative expenses can also include "costs of operating a business, for storage of property, for rent, for taxes and other costs incidental to protection and conservation"). Despite the statute's potentially broad reach, courts grant administrative status sparingly because of the presumption in bankruptcy that the "debtor's limited resources will be equally distributed among his creditors." *Trustees of the Almagamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986). To require the entity to pay any expenses that are not necessary to its preservation or recovery would thus conflict with the goals of bankruptcy law. *See In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr.N.D.N.Y.1989); *In re Grant Broadcasting of Philadelphia*, 71 B.R. 891, 897 (Bankr.E.D.Pa.1987); H.R.Rep. No. 595, 95th Cong., 1st Sess. 221 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6181.

### 2. Requirements for Administrative Expense Status

■ An allowance for administrative expense priority should be narrowly construed to include only those creditors that perform services that are actual and necessary to preserve the bankrupt estate or that enable it to maintain its business. *Broadcast*, 54 B.R. at 611; *Mammoth Mart*, 536 F.2d at 954; *In re Dant & Russell*, 853 F.2d 700, 706–07 (9th Cir. 1988). The claimant has the burden of proving that its services provided such a benefit to the bankrupt entity. *In re Chateaugay Corp.*, 102 B.R. 335, 353–54 (Bankr.S.D.N.Y.1989); *In re Amfesco Indus., Inc.*, 81 B.R. 777, 785 (Bankr. E.D.N.Y.1988) (administrative expense priority "should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserving the estate"); *In re O.P.M. Leasing*

*Serv., Inc.,* 60 B.R. 679, 680 (Bankr. S.D.N.Y.1986).

To sustain its burden, Appellant must establish two elements. First, it must show either that the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity). Second, it must show that the transaction resulted in a direct benefit to the debtor-in-possession. *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976); *In re United Trucking Service, Inc.,* 851 F.2d 159, 161–62 (6th Cir. 1988) (citing *In re White Motor Corp.,* 831 F.2d 106, 110 (6th Cir.1987); *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir. 1986); *In re Chateaugay Corp.,* 102 B.R. at 353; *In re Bath's Int'l, Inc.,* 25 B.R. 538 (S.D.N.Y.1982), *aff'd,* 31 B.R. 143, 145 (S.D.N.Y.1983). Consideration is furnished to the estate only where the debtor-in-possession induces post-petition performance or where performance on a contract not rejected by the debtor-in-possession is rendered to the estate. *ICS Cybernetics,* 111 B.R. at 37; *Mammoth Mart,* 536 F.2d at 954.

■ The Appellant satisfies the first part of this test. In the context of a lease, the consideration is the use of the equipment that is furnished to the debtor for the term of the lease. Thus, although the lease was entered into before CIS filed its petition for bankruptcy, CIS had use of the equipment for a period after it filed for bankruptcy. The present case is thus distinguishable from the cases that Appellee cites. *See* Appellee's Memorandum at 12–16. In those cases, the claimant creditor supplied the consideration prior to the debtor's petition for bankruptcy. *See In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984) (denying administrative expense because irrevocable contract was executed and completed prior to bankruptcy filing, even though benefits of contract accrued to debtor post-petition); *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98 (2d Cir.1986) (denying administrative expense because considera-

tion for pension fund withdrawal liability supported by debtor employees' pre-petition work); *In re Chateaugay Corp.,* 115 B.R. 760 (Bankr.S.D.N.Y.1990) (same). COMSAT's consideration for the monthly rental payments due from CIS, namely its subleasing of the computer equipment, was supplied to CIS throughout the term of the sublease and thus was not completed before CIS petitioned for bankruptcy. Accordingly, the first part of the *Mammoth Mart* test is met.

The second part of the test is the issue on which this appeal turns: whether COMSAT's sublease of the equipment to CIS constituted a benefit to CIS. Even though a creditor technically performs on a contract for the debtor-in-possession, he will not be entitled to administrative expense priority unless this performance benefits the debtor-in-possession. *Mammoth Mart,* 536 F.2d at 954. COMSAT argues that the sublease furnished a benefit to CIS because CIS was sub-subleasing the equipment to a third party, in spite of the fact that CIS had been prepaid for this sub-sublease prior to its filing for bankruptcy. To have received a "benefit," the debtor must have actually used the equipment, although the debtor need not have physically used the equipment. "Actual use" of equipment has therefore been held to include the further subleasing of equipment to third parties. *ICS Cybernetics,* 111 B.R. at 40 (citing *American A. & B. Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 125 (2d Cir.1960)) ("Debtor is actually using a piece of equipment in its normal course of business when it has entered into a lease of the equipment with a 'downstream' user"); *In re C.M. Systems, Inc.,* 89 B.R. 947, 950 (Bankr.M.D.Fla.1988) (holding that sublease of computer equipment constitutes "actual use"). CIS' sub-sublease of COMSAT's equipment therefore constituted actual use of that equipment.

This actual use of the equipment, however, did not benefit CIS as debtor-in-possession because Data Hardware had completely prepaid the amount due under the sub-sublease to the pre-petition entity of CIS. The bankrupt estate therefore de-

rived no benefit from this transaction. Appellant argues that although CIS as debtor-in-possession derived no income from this sub-sublease, the manner of payment of such a sublease should not be dispositive of the issue of benefit because the benefit conferred on the debtor-in-possession is the use of the leased property in the debtor's business—not the amount of money this lease generates for the debtor-in-possession. *See In re ICS Cybernetics, Inc.,* 111 B.R. 32, 40 (Bankr.N.D.N.Y.1989). *ICS Cybernetics* is distinguishable, however, in that the debtor had assigned its sublease payments to a creditor bank. Therefore, even though the debtor-in-possession did not directly receive cash flow, it did receive an equitable benefit from these payments made to its creditor bank. *Id.* at 36. In the instant case, however, CIS as debtor-in-possession received no such post-petition benefit, because the entire proceeds of the sub-sublease with Data Hardware were paid to the pre-petition entity of CIS.

Appellant also argues that CIS as debtor-in-possession derived a benefit because COMSAT's continued performance on the sublease enabled the estate to avoid liability to Data Hardware. This speculative benefit is not quantifiable, and a mere potential benefit does not qualify as a benefit for the purposes of determining administrative expense status. *ICS Cybernetics,* 111 B.R. at 36; *In re Kessler,* 23 B.R. 722, 724 (Bankr.S.D.N.Y.1982); *In re Rhymes, Inc.,* 14 B.R. 807, 808 (Bankr.D.Conn.1981).

Because the CIS estate derived no concrete, discernible benefit from its actual use of the computer equipment, the cost of subleasing the equipment from COMSAT is not entitled to administrative expense priority. The Appellant has failed to satisfy the second prong of the *Mammoth Mart* test, and therefore failed to show that this expense was necessary for preserving the estate according to the requirements of 11 U.S.C. § 503(b)(1)(A).

### 3. Reading Co. v. Brown is Inapposite

■ The Appellant argues that the instant case qualifies as an exception to the requirement that the creditor confer a benefit on the debtor-in-possession, as provided in *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). This exception, however, pertains only to cases in which the court grants administrative priority to damage claims resulting from a tortious or wrongful act committed post-petition by a debtor-in-possession or trustee. Although Appellant characterizes the CIS estate's failure to reject its sublease as a wrongful act that would absolve it from the requirement that it had benefitted the estate, no authority justifies this position. On the contrary, the Bankruptcy Code places no duty on a Chapter 11 debtor-in-possession to assume or reject an executory contract or unexpired lease. 11 U.S.C. § 365(d)(2); *American A. & B. Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir.1960). Under the Code, however, COMSAT could have made a motion to compel CIS as debtor-in-possession to accept or reject the sublease. 11 U.S.C. § 365(d)(2). Because the Code places no such duty on the debtor-in-possession but instead provides the creditor with the vehicle for compelling such action, the CIS estate's failure to accept or reject the sublease cannot be construed as a wrongful or tortious act that would elevate COMSAT's claims to administrative expense priority under *Reading Co. v. Brown.*

### CONCLUSION

For the foregoing reasons, this Court affirms the decision of the Bankruptcy Court. This action is ordered removed from the Court's active docket.

SO ORDERED.