USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2369 IN RE LA ELECTRONICA, INC., Debtor ________ LA ELECTRONICA, INC., Appellee, v. OLGA CAPO-ROMAN, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Cyr, Circuit Judges. ______________ ____________________ Fernando Van Derdys with whom Jos A. Acosta Grubb and Fiddler, ___________________ _____________________ ________ Gonz lez & Rodr guez were on brief for appellant. ____________________ William M. Vidal Carvajal with whom Antonio I. Hernandez-Rodri- __________________________ ____________________________ guez and Hernandez & Vidal were on brief for appellee. ____ _________________ ____________________ June 11, 1993 ____________________ CYR, Circuit Judge. Olga Capo Roman ("Capo"), former CYR, Circuit Judge. _____________ vice president of appellee La Electronica, Inc. (hereinafter: "Electronica" or "chapter 11 debtor"), appeals the district court's reversal of a bankruptcy court order according "adminis- trative expense" priority to certain alimony and support obliga- tions due Capo by her former husband, Reinaldo Betancourt Veraits ("Betancourt"). We affirm. I I BACKGROUND BACKGROUND __________ Capo filed for divorce from Betancourt in 1987. At that time, Betancourt was the president and sole shareholder of Electronica, and Capo served as its unsalaried vice-president and general manager. On July 22, 1988, Betancourt, Capo and Electronica entered into an unusual agreement ("Support Agree- ment") whereby Electronica assumed joint liability for the alimony and support payments Betancourt would be required to make to Capo under their divorce decree. As consideration for Electr- onica's assumption of liability under the Support Agreement, Capo agreed to resign her positions with Electronica.1 ____________________ 1The bankruptcy court found that the Support Agreement was "entered into in arms-length negotiations, . . ." and "executed with [a] clear and avowed corporate purpose . . . to sever[] all corporate and managerial connections of Mrs. Capo with debtor, thus avoiding the tense situations that could possibly arise _____ __________ ____ _____ ________ _____ after the divorce of the sole stockholder of the company from his wife and corporate officer [sic] and General Manager of the company for many years." (Emphasis added.) As we affirm on an alternate ground relied upon by the district court, we need not 2 On June 28, 1989, Electronica filed a voluntary chapter 11 petition and discontinued its payments under the Support Agreement.2 Approximately a year later, in June 1990, Capo requested that accrued alimony and support obligations under the Support Agreement be allowed as priority "administrative expens- es" of the chapter 11 estate. See Bankruptcy Code 503(a),(b)- ___ (1)(A); 11 U.S.C. 503(a),(b)(1)(A). Electronica opposed the request. On November 29, 1990, the bankruptcy court confirmed a chapter 11 reorganization plan which provided, inter alia, that _____ ____ "[a]ny executory contract not specifically rejected on the confirmation of the Plan shall be deemed assumed." The court contemporaneously allowed Capo's request to recover accrued support and alimony payments under the Support Agreement. It ruled that the Support Agreement, as an executory contract not previously rejected, was assumed in accordance with the express terms of the reorganization plan. Based on its finding that the Support Agreement provided a continuing benefit to "the operation of the corporation . . . [by] avoiding internal struggles between two competing officers[,] which could be detrimental to the [debtor's continued] operation," the bankruptcy court concluded that the accrued support and alimony payments were "necessary for ____________________ determine whether Capo's resignation constituted valid consider- ation for Electronica's assumption of Betancourt's obligations under the Support Agreement. 2The record does not indicate whether Betancourt continued to make payments under the divorce decree. 3 [the] preservation" of the chapter 11 estate, hence entitled to priority treatment as costs of administration under Bankruptcy Code 503(b)(1)(A). Electronica appealed. The district court reversed on the ground that the Support Agreement was not an executory contract and, alternatively, that the marital support and alimony payments due Capo under the Support Agreement were not "actual, necessary costs and expenses of preserving the estate," within the meaning of Bankruptcy Code 503(b)(1)(A). II II DISCUSSION DISCUSSION __________ "Administrative Expense" Priority "Administrative Expense" Priority ________________________________ In the circumstances of the present case, we need not concern ourselves with whether the Support Agreement was an "executory contract,"3 or whether Capo's prepetition resignation ____________________ 3Subject to certain exceptions not presently relevant, an executory contract or unexpired lease may be assumed or rejected pursuant to a confirmed chapter 11 plan. See 11 U.S.C. 365, ___ 1123(b). Although the Bankruptcy Code does not define the term "executory contract," most courts adopt the position advanced by Professor Vern Countryman, defining an "executory contract" as one "under which the obligation [of] both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern A. Countryman, Executory Contracts in Bankruptcy, Pt. I, 57 Minn. L. ________________________________________ Rev. 439, 460 (1973). A few courts, treating Professor Countrym- an's definition as "helpful but not controlling," hold that the determination whether a contract is "executory" requires a more "functional" approach, "with an eye towards furthering the policies of the Bankruptcy Code." See In re Richmond Metal ___ ______________________ Finishers, Inc., 34 B.R. 521 (Bkrtcy. E.D. Va. 1983), rev'd., 38 _______________ ______ B.R. 341 (E.D. Va. 1984), rev'd., 756 F.2d 1043 (4th Cir. 1985), ______ cert. denied, 475 U.S. 1057 (1986); see also In re Magness, 972 _____ ______ ___ ____ _____________ F.2d 689, 694 (6th Cir. 1992); In re Jolly, 574 F.2d 349 (6th ____________ 4 as Electronica's unsalaried vice-president and general manager constituted valid consideration for Electronica's assumption of _____________ Betancourt's obligations under the divorce decree. Even assuming sufficient consideration for the Support Agreement, Capo utterly failed to carry her burden of proof on the subsidiary proposition that the chapter 11 debtor's postpetition assumption of its president's financial obligations under the divorce decree constituted an "actual, necessary cost[] and expense[] of pre- serving the [chapter 11] estate," within the meaning of section _______ __ 503(b)(1)(A); see also In re Hemingway Transport, Inc., 954 F.2d ___ ____ ________________________________ 1, 5 (1st Cir. 1992) ("the burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it"); In re CIS Corp., 142 B.R. 640, 642 _________________ (S.D.N.Y. 1992) ( 503(b)(1)(A) claimant has burden of proving that its services provided an "actual, necessary" benefit to the debtor). As we have long recognized, "the traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." Hemingway Trans., 954 F.2d at 4-5 ________________ (citing cases). In order to qualify for "administrative expense" priority under Bankruptcy Code 503(b)(1)(A), therefore, "the consideration supporting the claimant's right to payment [must ____________________ Cir.), cert. denied, 439 U.S. 929 (1978); In re Booth, 19 B.R. 53 _____ ______ ___________ (Bankr. D. Utah 1982). See generally David G. Epstein, et al., 1 ___ _________ Bankruptcy 5-4(b) (1992) (surveying case law on both sides of __________ issue). 5 be] supplied to and beneficial to the debtor-in-possession in the operation of the business." In re Mammoth Mart, Inc., 536 F.2d _________________________ 950, 954 (1976) (construing Bankruptcy Act forerunner to Code 503(b)). We can discern no economic "benefit" to the chapter 11 _______ __ estate from its assumption of an "executory contract" to compen- ______ sate Capo for not performing the unsalaried corporate services ___ she previously performed for Electronica. To the extent Electro- nica derived economic benefit from Capo's resignation i.e., in ____ the form of diminished risk of "disruption" to its business operations law and logic suggest that the benefit derived pre- ____ petition, viz, at the time her resignation was submitted, not ________ ___ __ ___ ____ ___ ___________ ___ _________ during the postpetition stewardship of the debtor-in-possession. Once Capo resigned, any presumed risk of internal "disruption" ceased. The same result would follow if the Support Agreement somehow were considered analogous to a severance agreement. Id. ___ at 955 (whether debtor's severance pay claim based on unrejected contract is entitled to administrative priority depends on extent to which "consideration supporting the claim was supplied during ______ the reorganization.") (emphasis added). ___ ______________ As the district court correctly reversed the allowance of appellant's request for "administrative expense" priority under Bankruptcy Code 503(b)(1)(A), we affirm.4 Affirmed. ________ ____________________ 4Our disallowance of Capo's 503(a),(b)(1)(A) request is not intended to foreclose its reconsideration as a timely infor- _________ ___ _______________ mal proof of unsecured claim. 6 7