In re ENRON CORP., et al., Debtors.

No. 01 B 16034(AJG).

United States Bankruptcy Court, S.D. New York.

June 14, 2002.

---

Cadwalader, Wickersham & Taft, By Edward A. Smith, of Counsel, New York City, Attorneys for the Debtors.

Kramer, Levin, Naftalis & Frankel, LLP, By Philip Bentley, of Counsel, New York City, Attorneys for Natural Gas and Trailblazer.

Squire, Sanders & Dempsey, LLP, By G. Christopher Meyer, of Counsel, Cleveland, OH, Attorneys for the Official Committee of Unsecured Creditors.

## MEMORANDUM DECISION DENYING MOTION OF NATURAL GAS PIPELINE COMPANY OF AMERICA AND TRAILBLAZER PIPELINE COMPANY FOR AN ORDER ALLOWING AND COMPELLING PAYMENT OF ADMINISTRATION EXPENSE CLAIMS PURSUANT TO 11 U.S.C. § 503.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The issue [1] before the Court is whether a claim based on the provision of pipeline capacity for the transportation of natural gas to a debtor-in-possession pursuant to a pre-petition agreement with the debtor is entitled to priority as an administrative expense for a period during which there was no actual use of the pipeline capacity. The Court finds that during the period that the pipeline capacity was not actually used, there was no benefit provided to the debtor-in-possession that would warrant such priority.

### FACTS

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corporation and certain of its affiliated entities, including Enron North America Corporation ("ENA" and together with the other filing entities, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(a) of the Fed-

1. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Reference to this Court, dated July 10, 1984 (Ward, Acting C.J.). This matter is core pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052 which incorporates Fed.R.Civ.P. 52.

eral Rules of Bankruptcy Procedure. The Debtors continue to operate their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to filing its petition, ENA was one of the largest buyers and sellers of energy, including natural gas, and energy related services. In order to transport and supply natural gas for the benefit of its customers and trading partners, ENA entered into transportation contracts with entities that provide the services of transporting and storing natural gas. The contracts at issue here confer the right to transport natural gas.

Pre-petition, ENA entered into several natural gas transportation contracts with Natural Gas Pipeline of America ("NGPL") and, its affiliate, Trailblazer Pipeline Company ("Trailblazer" and together with NGPL, the "Movants"). NGPL and Trailblazer are both engaged in the business of transporting natural gas in interstate commerce. In addition, NGPL provides storage capacity for natural gas. NGPL and Trailblazer are regulated by the Federal Energy Regulatory Commission ("FERC").

Where a party, who has entered into a transportation contract with a pipeline company, has the absolute right, at any time, to use all or any part of the capacity for which it has contracted,[2] it is referred to as firm capacity ("Firm Capacity"). A Firm Capacity customer has priority over other pipeline customers on the capacity for which it has contracted on that basis. These priority rights afforded through Firm Capacity can only be transferred or assigned to another party by the Firm Capacity holder through capacity releases

made in accordance with procedures mandated by FERC. According to FERC regulations and the relevant FERC Gas Tariff, ENA was permitted to keep any profit it made on releases if it resold the Firm Capacity at a rate greater than its contract rate with the NGPL or Trailblazer. Thus, the holder of the Firm Capacity rights has the potential to realize value from the Firm Capacity rights even without using the capacity itself by reselling it on the secondary transportation market.[3]

Although the pipeline company cannot resell the Firm Capacity that it has contracted out, it has the ability to sell unutilized Firm Capacity on an "interruptible" basis. This type of service has a lower priority as it is "interruptible" at any time if a Firm Capacity customer elects to utilize the capacity. This service is procurable on a day-to-day basis, if available, one day in advance. Thus, interruptible service is less dependable and, therefore, less valuable.

NGPL and Trailblazer filed a Motion, dated March 27, 2002 (the "Motion") concerning three transportation contracts to which ENA is a party. In two contracts with NGPL and one with Trailblazer, ENA reserved Firm Capacity on their respective pipelines. All of the contracts provided for both a monthly rental charge for the reserved capacity and an additional charge for any gas actually transported on the pipeline. ENA is authorized either to use the Firm Capacity or release it to another party in accordance with FERC procedures. The party to whom capacity is released is liable in the first instance for the payment for its use. In the Motion, NGPL and Trailblazer seek administrative expense priority for payments due under

---

2. Subject only to the pipeline company's inability to perform based on *force majeure*.

3. FERC has established a release bulletin board for Firm Capacity buyers and sellers to meet and market transportation capacity.

the three transportation contracts for the post-petition period.

The parties entered into a stipulation (the "Stipulation") after the Court had ruled concerning a previous motion filed by the Movants.[4] Pursuant to the portion of the Stipulation relevant to the issue before the Court, the two contracts with NGPL were rejected on February 1, 2002 and, with respect to the Trailblazer contract, ENA effected certain releases of the capacity for successive periods from February 7, 2002 through September 30, 2002.[5] These releases of capacity ensure that Trailblazer will receive payment in full of the contract charges under the transportation agreement during the period of the releases. In addition, the terms of the Stipulation require that Trailblazer be paid capacity charges for any subsequent period until ENA rejects the agreement. As a result, Trailblazer has been paid and will continue to be paid capacity charges from February 7, 2002 until ENA rejects the agreement. In the Stipulation, the parties reserved all of their respective rights with respect to claims related to the transportation agreements, including without limitation whether NGPL and Trailblazer are entitled to administrative priority status for post-petition contract charges that were not specifically addressed by the Stipulation.

In the Motion, NGPL seeks administrative expense priority for charges allegedly accrued under its transportation contract with ENA for the period from December 2, 2002 through the period of the rejection of the leases on February 1, 2002. The Debtors acknowledges that NGPL pipeline capacity was used on December 2 and 3, 2001, and are prepared to pay a transport charge for the actual usage on those dates as an administrative expense. However, for the balance of the period, ENA contends that its estate received no benefit and therefore NGPL's claim is not entitled to an administrative priority.

With respect to the ENA contract with Trailblazer, administrative expense priority is sought for the post-petition period from December 1, 2002 until February 6, 2002 which is prior to the date that, pursuant to the stipulation, Trailblazer started to receive payment in full for capacity charges accruing under the contract. ENA contends that as there was no benefit to its estate during this post-petition period prior to the releases of capacity, Trailblazer is not entitled to administrative priority for its claim. Thus, ENA maintains that the portion of the claims of NGPL and Trailblazer not accorded administrative priority are general unsecured claims.

## DISCUSSION

■ Section 503(b)(1)(A) of the Bankruptcy Code provides a priority for "the actual, necessary costs and expenses of preserving the estate ... for services rendered after the commencement of the case." Pursuant to section 507(a)(1) of the Bankruptcy Code, these expenses for administering the estate are afforded a first

---

4. NGPL and Trailblazer had filed a previous motion, dated December 28, 2001, seeking to modify the automatic stay to permit them to terminate several contracts with ENA, including the contracts at issue in the current Motion, or alternatively, to compel ENA to assume or reject those contracts. After the Court's January 25, 2002 ruling on that motion, which established a deadline of April 2, 2002 for ENA to assume or reject the contract, the parties negotiated and sought the Court's approval of the Stipulation which modified the Court's ruling. The Court subsequently approved the Stipulation. The Stipulation also resolved issues concerning a certain storage agreement with NGPL.

5. ENA received a profit from the exercise of its rights pursuant to the Trailblazer transportation contract to effect these releases.

priority. Thus, expenses the debtor-in-possession incurs during the reorganization effort are afforded a first priority. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984).

■ This priority is based on the premise that the operation of the business by a debtor-in possession benefits pre-petition creditors; therefore, any claims that result from that operation are entitled to payment prior to payment to "creditors for whose benefit the continued operation of the business was allowed." *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976). While *Mammoth Mart* was decided under the former Bankruptcy Act, its analysis is applicable under the Bankruptcy Code. *In re Drexel Burnham Lambert Group Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y.1991).

■ Administrative expenses are afforded this priority to facilitate the reorganization effort by encouraging third-parties, who might be reluctant to deal with a debtor-in-possession, to transact such business. *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986) *citing, Mammoth Mart*, 536 F.2d at 954. Otherwise, absent this incentive, the third-parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors. *Id.*

■ Nevertheless, in light of the bankruptcy goal of providing equal distribution of a debtor's assets to all creditors, priorities are narrowly construed. *Amalgamated Ins. Fund*, 789 F.2d at 100. Strictly construing the terms "actual" and "necessary" minimizes administrative expense claims thereby preserving the estate to benefit all creditors. *Drexel*, 134 B.R. at 488. If claims not intended to have priority are afforded such, the value

of the priority for those creditors Congress intended to prefer would be diluted. *Mammoth Mart*, 536 F.2d at 953. It is important to note that once a debtor is in bankruptcy, an ordinary contract action between a provider of goods or services and the solvent recipient of such goods or services becomes a contest among the debtor's creditors to share in the distribution of the debtor's assets. *General American Transportation Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1133 (10th Cir.1993). Any priority given to one creditor is done to the detriment of other creditors. *In re Patient Education Media, Inc.*, 221 B.R. 97, 101 (Bankr.S.D.N.Y.1998). The focus on allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss. *In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 78 (Bankr. S.D.N.Y.1994). Thus, a court looks to the actual benefit to the estate not the loss sustained by a creditor. *In re CIS Corp.*, 142 B.R. 640, 642 (S.D.N.Y.1992). The claimant has the burden of establishing entitlement to the priority. *Drexel*, 134 B.R. at 489.

■ An expense will be accorded administrative status

1) if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and

2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

*Amalgamated Ins. Fund*, 789 F.2d at 101; *Mammoth Mart*, 536 F.2d at 954.

■ The services performed by the claimant must have been "induced" by the debtor-in-possession, not the pre-petition debtor. *Jartran, Inc.*, 732 F.2d at 587, *citing, Mammoth Mart*, 536 F.2d at 956.

Considering inducement by the debtor-in-possession to be a crucial element comports with the policy reason for allowing the priority, which is to encourage third-parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors. *Jartran Inc.*, 732 F.2d at 588, 590. Thus, benefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim priority as it would be contrary to this policy reason for allowing the priority. *Jartran, Inc.*, 732 F.2d at 590.

 Where a "debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *Patient Education Media*, 221 B.R. at 101, *quoting, NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *see also In re Continental Airlines, Inc.*, 146 B.R. 520, 526 (Bankr.D.Del.1992). Thus, the claims of third-parties who are induced to supply goods or services to a debtor-in-possession pursuant to a contract that has not been rejected are afforded administrative priority to the extent that the consideration supporting the claim was supplied during the reorganization. *Jartran, Inc.*, 732 F.2d at 588.

 A debtor must derive a benefit under a contract in order for its claim to be accorded administrative expense priority. *Macy*, 170 B.R. at 77–78. The benefit must run to the debtor-in-possession. *Continental Airlines*, 146 B.R. at 526. If the consideration was supplied pre-petition, the claim is not entitled to administrative priority even where the right to payment arises post-petition. *Jartran, Inc.*, 732 F.2d at 587.

 The inclusion of the words "actual" and "necessary" in section 503(b)(1)(A) requires that the estate receive a "real benefit from the transaction." *Drexel*, 134 B.R. at 488. A potential benefit is not sufficient. *Id.* In order for a creditor's claim to be entitled to administrative status, there must be actual use of the creditors property by the debtor-in-possession. *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr.N.D.N.Y.1989). Actual use confers a "concrete benefit on the estate" thereby entitling a claimant to an administrative expense claim. *Id.* Where only part of the leased property is used by a debtor-in-possession, an administrative claim priority is accorded only to the portion used. *See Patient Education Media*, 221 B.R. at 102 (collecting cases).

 The mere possession of the claimant's property by the debtor does not warrant administrative claim status. *Mid Region Petroleum*, 1 F.3d at 1133. The "option" to use the property that is inherent in mere possession is considered not sufficient to establish benefit to the estate if the debtor does not actually use the property. *Patient Education Media*, 221 B.R. at 102. The potential benefit to an estate provided by storage of a creditor's property as available inventory for potential customers is not the equivalent of actual use. *ICS Cybernetics, Inc.*, 111 B.R. at 38. There must be a concrete, discernible benefit from actual use because a speculative benefit or the mere potential for benefit is not enough to warrant an administrative claim priority. *CIS Corp.*, 142 B.R. at 644. *See also, Macy*, 170 B.R. at 78 (noting that an option or potential to use or benefit from property does not equal benefit to the estate); *Mid Region Petroleum*, 1 F.3d at 1133 (noting that although the debtor is afforded time, while in possession of the property, to deliberate and consider whether to assume or reject the lease, and

thus allowed the opportunity to decide whether to resume its business or sell the assets to a third-party, that opportunity, though advantageous is not the type of benefit that warrants elevation of the claim to administrative priority); *In re Kessler*, 23 B.R. 722, 724 (Bankr.S.D.N.Y.1982), *aff'd, Amalgamated Ins. Fund v. Kessler*, 55 B.R. 735 (S.D.N.Y.1985) (noting that administrative claims are assessed based on actual value received by the estate and a claim that merely has potential for benefit to the estate "upon the happening of other events" is not entitled to administrative priority).

■ With respect to an executory contract, the focus is "on whether the debtor *used* the nondebtor's property in the ordinary course of its business, and continued to receive and accept the nondebtor's performance." *Patient Education Media*, 221 B.R. at 102 (emphasis in the original). Making entitlement to an administrative claim depend on actual use rather than mere possession recognizes the need to afford the debtor time to make a reasoned decision on whether to assume or reject the contract "without exposing the estate to administrative liability solely on account of the delay." *Id.*

■ Nevertheless, actual use does not require physical use by the debtor itself but may include subleasing of the property by the debtor, *ICS Cybernetics, Inc.*, 111 B.R. at 40, at least where it receives an income stream from the sublease during the reorganization. *See CIS Corp.*, 142 B.R. at 643–44 (finding claim not entitled to administrative status because sublessee had pre-paid lease payments and although equipment was used during reorganization, the benefit was to the pre-petition entity as the consideration was paid pre-petition).

*The Parties' Contentions*

The Movants contend that the transportation contracts represent ENA's infrastructure, and ENA should be required to pay the costs of maintaining its infrastructure. The Movants argue that, as a Firm Capacity holder, ENA has what amounts to an exclusive "license" to use or to release capacity to third-parties, and that this license itself confers a benefit on the estate and preserves the value of the estate regardless of whether ENA gets the best or highest use from the transportation contracts during the post-petition period. The Movants maintain that a Firm Capacity holder has a position valued in the energy business because as a holder of Firm Capacity, it preserves its right to resell the capacity at a profit and competitors are excluded from acquiring the capacity thereby maximizing the value of the gas that it might purchase from third-parties, which it can then transport and resell at a profit. The Movants further argue that the existence of the contracts preserved ENA's ability to release all or a portion of the capacity and ENA's ability to meet its contractual obligations to provide its customers with gas to the extent it found these options to be profitable. Finally, the Movants contend that ENA's decision to retain the contract rights for an additional time to determine whether they wanted to assume and assign them shows the estate received a benefit.

The Debtors argue that because performance under the Firm Capacity transportation contracts was not induced by a debtor-in-possession, the claim for the charges accruing during the relevant post-petition time frame are not entitled to administrative expense priority. The Debtors further argue that an administrative priority is not available for this claim because the unused capacity did not confer the required benefit upon ENA's estate. The

Debtors contend that merely having capacity available does not establish the type of benefit necessary to warrant administrative priority for the post-petition charges. Finally, the Debtors argue that while they did oppose the Movants' previous motion which sought to terminate the transportation contracts or to compel the Debtors to immediately assume or reject them, they did so in recognition of the potential value that the contracts had to ENA's estate and its need to have sufficient time to attempt to capitalize on any such value. The Debtors maintain that they did not assert that ENA was receiving a current benefit at that time from the unused capacity.

### Application of law to facts

■ In the instant case, aside from its actual use of NGPL's pipeline capacity to transport natural gas on December 2 and 3, 2002, for which dates the Debtors acknowledge that the contract amount due NGPL is entitled to administrative priority, there was no actual use of NGPL's pipeline during the post-petition, pre-rejection period. In addition, there was no usage of pipeline capacity on the Trailblazer pipeline for the post-petition period prior to February 7, 2002, the date on which ENA released pipeline capacity, for which Trailblazer is being compensated at the contract rate. Therefore, during the period in which there was no actual use of the pipelines by either ENA, as debtor-in-possession, or through the release of capacity to a third-party, there was no concrete benefit conferred upon ENA's estate. *ICS Cybernetics, Inc.*, 111 B.R. at 36.

The Movants argue that in *Patient Educ. Media*, the court found that simply allowing assets to sit in storage without physical use constituted use. However, that was not the finding of the court in that case. The claim for which the movant in *Patient Educ. Media* sought administrative priority was not the value of using the

asset that was being kept in storage. Rather, the claim was for usage of the actual square footage of space into which that asset had been placed. Thus, because there had been actual usage of the square footage, the court found the claim to warrant an administrative priority. *Patient Educ. Media*, 221 B.R. at 102–103.

In fact, an analysis of the *Patient Educ. Media* case is instructive and actually supports the Debtors' position in the instant case. In *Patient Educ. Media*, the debtor produced and distributed education video tapes. When producing these video tapes, the debtor utilized a large customized production set. The debtor stored this production set at a 7,000 square foot sound stage in the claimant's headquarters. Indeed, the production set occupied virtually the entire square footage of the sound stage. The administrative expense priority sought by the claimant in *Patient Educ. Media* was not for "use" of the unutilized production set. Rather, the claim was for the actual use of 7,000 square feet of space at the sound stage. The court found that because the debtor thought preservation of the production set would give its company stature and maximize the possibility of a sale of all its assets, the debtor determined to keep the production set and continue to store it on the claimant's sound stage. The debtor therefore used "the entire sound stage" post-petition in an effort to preserve and maintain the production set—an asset of the estate. *Patient Educ. Media*, 221 B.R. at 102–103. Thus, the *Patient Educ. Media* court found that the actual use of the sound stage benefitted the estate. *Id.* The *Patient Educ. Media* court further found that the fact that the debtor subsequently did not sell the production set and the preservation of that set ultimately did not prove profitable was not determinative as a "debtor-in-possession must pay for the use of a nondebtor's

property, even where the *use* turns out to be unprofitable." *Patient Educ. Media,* 221 B.R. at 102. (Emphasis added). The *Patient Educ. Media* court found that the debtor "did not simply possess the right to use the sound stage, it actually used it." *Patient Educ. Media,* 221 B.R. at 103. The *Patient Educ. Media* court expressly noted that "[e]ven where the debtor-in-possession possesses the nondebtor's property, or has the option to use, no administrative expense liability will attach unless he actually uses it." *Id.,* 221 B.R. at 102. In this case, the Movants seek an administrative expense priority for a period when ENA had a right to use the pipeline, by transporting gas or releasing capacity, but did not use it.

Also relevant is *ICS Cybernetics, Inc.,* where the debtor leased computer equipment from the claimant but not for the purpose of using the equipment in its operation, but rather, to sublease the equipment to other end users. The claimant argued that the debtor's storage of the equipment was not mere possession but was actual use because the debtor's intended use of the computer equipment was "as inventory to be available for sub-leasing to its downstream end-users." The court rejected this argument and found that the mere potential of benefit to the estate was not sufficient to elevate the claim to administrative priority. Rather, the focus was on an actual benefit to the estate. The court required actual use to establish there had been a concrete benefit to the estate. *ICS Cybernetics, Inc.,* 111 B.R. at 36. This would include use by any sublessee if the consideration flowed to the debtor-in-possession. *Id.; See also CIS Corp.,* 142 B.R. at 644.

The Movants' arguments concerning the alleged benefit to ENA based on its valued position and its alleged "license" to first use of the pipeline to the exclusion of others really speaks to the options and potential to benefit afforded ENA if and when it transports gas through the pipeline or releases capacity to do the same. However, merely having the pipeline capacity available with the option to use or resell the capacity or otherwise potentially benefit from having the capacity available is not the type of benefit that warrants administrative expense priority for the contract claim. *See Mid Region Petroleum,* 1 F.3d at 1133. Rather, it is the concrete benefit received by ENA from the actual use of the pipeline, by either itself or by releasing such capacity to a third-party, that would warrant elevating the contract claim to administrative priority. *ICS Cybernetics, Inc.,* 111 B.R. at 36.

The same analysis applies to the Movants' argument that by having the pipeline capacity available, ENA was provided with the ability to meet its contractual obligations to provide its customers with gas. Had ENA availed itself of the option and actually used the pipeline, then any benefit received would warrant administrative priority for the contract claim. However, again, the mere option or potential to use the pipeline is similar to the mere potential to use the inventory intended for subleasing in *ICS Cybernetics Inc.*

The Debtors recognize that actual use warrants payment according to the contract rate, and are prepared to pay NGPL for the use of its pipeline to transport gas on December 2 and 3, 2002. In addition, they acknowledge that Trailblazer is being properly compensated at the contract rate for the use of its pipeline as a result of the release of capacity on that pipeline since February 7, 2002.[6]

---

6. The Movants also contend that there was an additional release by ENA of the Trailblazer

pipeline capacity in January that would constitute actual "use" by ENA. They say that

Where there was no actual use of the pipelines, however, the options afforded ENA are not sufficient to confer the type of concrete benefit required under an administrative claim analysis. Thus, because there was no actual usage of the pipeline, the claims of NGPL and Trailblazer for those periods of non-use are not entitled to an administrative priority.

The Movants suggest that because ENA realized substantial profit from those periods of time when ENA did release capacity for use by third-parties, that ENA should pay at the contract rate for all periods covered by the transportation contract. However, as previously noted, priorities are strictly construed and only claims based on actual usage that result in benefit to a debtor-in-possession are entitled to administrative priority. Moreover, when there is partial use of a creditor's property, administrative priority status only applies to a claim based on the portion used. Trailblazer is being paid for capacity charges during the period that there was usage by ENA's release of pipeline capacity.

The Movants contend that ENA's previous efforts to retain the contract rights for an additional time, to determine whether it wanted to assume and assign them, prove that there was benefit to ENA. This contention, however, fails to consider the need to afford a debtor the opportunity to make a reasoned decision on whether to assume or reject an executory contract. *Patient Education Media*, 221 B.R. at 102. In

fact, under the Bankruptcy Code, a debtor is afforded until confirmation of a plan to determine whether to assume or reject an executory contract unless the Court orders otherwise on request of a party to such contract. *See* 11 U.S.C. § 365(d)(2). When ENA opposed the Movants' motion seeking to terminate the transportation contracts or to compel the Debtors to assume or reject them, the additional time was needed to assess the potential benefit and determine whether it could ultimately derive actual benefit for the estate from the resale of capacity. Indeed, it was able to do so with the Trailblazer transportation contracts and for those periods, it resold capacity.[7] In those instances where ENA was able to derive benefit from actual use, Trailblazer is being compensated pursuant to the terms of the transportation contract and the relevant tariffs.

Finally, the Movants argue that ENA was in the business of speculating. They delineate three distinct areas in which they maintain that ENA speculated as follows: (i) on whether physical gas transactions would make a profit in the future; (ii) on the future price of capacity releases; and (iii) on financial transactions in ENA's trading business. The Movants maintain that the availability of the pipeline was a "usage" in the ordinary conduct of its speculation. In sum, the Movants contend that because of the nature of the ENA's business, the availability of the pipeline capacity alone confers a sufficient benefit on

---

release process started in early January 2002 through January 11, 2002. However, that release was subsequently voided by FERC as violative of FERC regulations. As a result, the release became a nullity. The Court agrees with the Debtors' assessment that any attempt by ENA to release capacity is merely an attempt to draw potential value in compliance with its fiduciary duty and unless the attempt is successful, the estate does not derive a benefit.

7. In addition, the Debtors maintain that the Movants effectively deprived Trailblazer of an earlier payment of its monthly charges by not permitting ENA to effect any releases of capacity under its transportation agreement with Trailblazer's until ENA paid NGPL for post-petition storage charges under its storage agreement with NGPL.

ENA's estate to warrant administrative priority for its claim.

The first two areas specified concern speculation as to the future price of the products, either the price of the natural gas or the price at which ENA could release pipeline capacity. As such, the speculation is the same as that experienced by any debtor-in-possession who holds a commodity and attempts to market it and capitalize on its value. In *ICS Cybernetics Inc.*, the debtor speculated on the value of subleasing the computers. As previously discussed, such attempts are not beneficial to the estate until successful. Thus, the debtor-in-possession, in its capacity as a marketer of pipeline capacity and natural gas or as an entity that delivers energy, did not derive any benefit for the period during which there was no actual use of the pipeline capacity.

With respect to the third area, concerning speculation on financial instruments in ENA's trading business, the Movants argue that the availability of the pipeline capacity was used by ENA to benefit its trading business as a "backstop" to limit potential losses. The Movants have sought discovery on the issue of ENA's post-petition trading business and on whether ENA used the availability of pipeline capacity to assist in the trading business. However, it does not appear that the Debtors conducted any trading activity post-petition. Moreover, even if they engaged in any trading activity post-petition, the benefit referenced would ultimately result when the pipeline was actually used. Prior to that time, any benefit would be too attenuated to confer administrative priority status on their claim. Thus, discovery would serve no purpose.[8]

### CONCLUSION

The claims of NGPL and Trailblazer based on the period during which there was no actual use of their respective pipelines are not entitled to administrative expense priority. NGPL, however, is entitled to an administrative expense priority for its claim for the two-day period between December 2 and 3, 2002 when ENA actually used NGPL's pipeline to transport gas. Except for the two-day period for which NGPL is entitled to an administrative priority, the Motion is denied.[9] In addition, the Movants request for discovery is denied.

Counsel for the Debtors is directed to settle an order consistent with this Memorandum Decision, on three days' notice.

---

8. Inasmuch as the Court has found that there was no benefit conferred on the debtor-in-possession to warrant elevating the Movants' claims to administrative priority status, the Court does not reach the issue of what type of inducement by the debtor-in-possession of the claimant's performance would be required to elevate the claim to administrative priority in the context of a pre-petition executory contract where the non-debtor is forced to perform pursuant to the terms of the pre-petition contract.

9. In the Motion, the Movants also sought to recover as administrative expenses, any additional post-petition charges due Trailblazer pursuant to the Stipulation to the extent such charges were not paid. Inasmuch as there has been no claim that such charges have not been paid, that portion of the Motion is denied without prejudice to refiling if necessary.