**In re ENRON CORP., et al., Debtors.**

**No. 01 B 16034(AJG).**

United States Bankruptcy Court,
S.D. New York.

June 28, 2002.

Cadwalader, Wickersham & Taft, by Edward A. Smith, Evan R. Fleck, of counsel, New York City, for Debtors.

Corash & Hollender, P.C., by Paul Hollender, of counsel, New York City, for Florida Gas Transmission Company.

Squire, Sanders & Dempsey, LLP, by G. Christopher Meyer, of counsel, Cleveland, OH, for Official Committee of Unsecured Creditors.

MEMORANDUM DECISION REGARDING FLORIDA GAS TRANSMISSION COMPANY'S (i) MOTION SEEKING TO COMPEL ENRON NORTH AMERICA CORPORATION TO ASSUME OR REJECT CERTAIN EXECUTORY CONTRACTS; AND (ii) MOTIONS SEEKING ADMINISTRATIVE EXPENSE PRIORITY FOR CERTAIN CLAIMS AGAINST ENRON NORTH AMERICA CORPORATION AND ENRON ENERGY SERVICES INC.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The Court is asked to decide whether claims based on the reservation of pipeline capacity for the transportation of natural gas by debtors-in-possession pursuant to pre-petition agreements with those debtors are entitled to priority as administrative expenses for a period during which there was no actual use of the pipeline capacity. The Court is also asked to determine whether a debtor should be compelled to assume or reject certain of those agreements.[1]

---

1. The Court has subject matter jurisdiction over these motions pursuant to 28 U.S.C. § 1334(b) and the General Reference to this Court, dated July 10, 1984 (Ward, Acting C.J.). This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B) & (O). This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Fed. R.

The Court finds that during the period that the pipeline capacity was not actually used, there was no benefit provided to the debtors-in-possession that would warrant administrative priority for the claims at issue. The Court further finds, based on the facts of this case, that the debtor should be afforded additional time to determine whether to assume or reject the agreements.

## FACTS

Commencing on December 2, 2001, and continuing from time to time thereafter, Enron Corporation and certain of its affiliated entities, including Enron North America Corporation ("ENA") and Enron Energy Services, Inc. ("EES" and together with ENA and the other filing entities, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(a) of the Federal Rules of Bankruptcy Procedure. The Debtors continue to operate their respective businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

ENA and EES, each purchase and sell natural gas. In order to transport and supply natural gas for the benefit of its customers, ENA entered into transportation contracts with entities that provide the services of transporting natural gas. Similarly, EES entered into agreements that confer the right to transport natural gas.

Florida Gas Transmission Company ("Florida Gas") owns and operates a pipeline system for the transportation of natural gas. In its business of transporting natural gas in interstate commerce, Florida Gas is regulated by the Federal Energy Regulatory Commission ("FERC"). Prepetition, ENA and EES were parties to several natural gas transportation contracts with Florida Gas pursuant to which Florida Gas transports natural gas for or at the direction of ENA or EES, under their respective contracts.

There are five agreements at issue concerning ENA—three Firm Transportation Service Agreements, one Interruptible Transportation Service Agreement,[2] and one Delivery Point Operator Agreement. There are two agreements at issue involving EES, all three are Firm Transportation Service Agreements.

Under its three Firm Transportation Service Agreements, ENA reserved quantities of pipeline capacity for which it is required to pay a fixed monthly charge as well as a charge for gas transported on the Florida Gas pipeline. Pursuant to these agreements, ENA may use the pipeline capacity to transport natural gas or may release the capacity to a third-party. Current FERC regulations permit the release of capacity by ENA at rates in excess of the rates that ENA must pay pursuant to the agreements. Post-petition, ENA has released capacity on the Florida Gas pipeline to third parties on a short-term basis. Those third-parties paid Florida Gas the market rate for the transportation capacity. As a result of those releases, between January and March 2002, Florida Gas re-

---

Bankr.P. 7052 which incorporates Fed. R.Civ.P. 52.

**2.** "Interruptible service" has a lower priority than firm capacity as it is "interruptible" at any time if a firm capacity customer elects to

utilize the capacity. The interruptible service is procurable on a day-to-day basis, if available, one day in advance. Thus, interruptible service is less dependable and, therefore, less valuable.

ceived 40% of the monthly reservation charge. In April, ENA released capacity which resulted in Florida Gas receiving 55% of the monthly reservation charge. From May 1 to September 30, 2002, ENA released the capacity at more than 110% of the monthly reservation charge. The arrangement for the release to a third-party of Florida Gas pipeline capacity, at a rate in excess of the contract rate, thereby, assures Florida Gas of payment of the full monthly reservation charges pursuant to the terms of the Transportation Service Agreements for the period from May 1 to September 30, 2002.

In the two Firm Transportation Service Agreements involving EES, the pipeline capacity was originally contracted to Peoples Gas System of Florida ("Peoples") which released the capacity to EES. Pursuant to the agreements, and as a result of the release, EES was primarily responsible for paying charges for reservation of pipeline capacity and charges for the use of the pipeline for any natural gas it actually transported on the pipeline. As the relinquishing party, Peoples remained liable for the reservation charges not paid by EES. In fact, Peoples has paid Florida Gas 100% of all outstanding reservation charges under the EES agreements.

The terms of the Interruptible Transportation Service Agreement between ENA and Florida Gas only requires a commodity charge for the actual transportation of the natural gas through the pipeline. The Delivery Point Operator Agreement involves balancing of volumes. Florida Gas seeks payment of all of the charges that have accrued post-petition under the transportation agreements as an administrative expense.

Florida Gas filed three motions, dated March 27, 2002, concerning the transportation agreements. The first motion seeks to compel ENA to assume or reject the three Firm Transportation Service Agreements. The second motion seeks administrative priority for the claims Florida Gas asserts against ENA based on post-petition charges accrued under the five transportation agreements with ENA. On the same bases, the third motion seeks administrative priority for the claims Florida Gas asserts against EES on their two contracts. The Debtors filed a Response objecting to the relief sought by Florida Gas. The Official Committee of Unsecured Creditors filed a Response on May 13, 2002, joining in the Debtors' objection. A hearing on these motions was held before the Court on May 31, 2002 (the "Hearing").

## DISCUSSION

### Motion to Compel Assumption or Rejection of Agreements

Florida Gas seeks an order compelling ENA to make a determination to assume or reject the three ENA Firm Service Transportation Agreements within thirty days of the Hearing. Florida Gas argues that the cases were filed on December 2, 2002, and as of the date of the Hearing, ENA already had over five months to consider whether it wanted to assume or reject these contracts. Florida Gas contends that any further delay threatens both Florida Gas and the ENA estate with additional risks and losses.

Florida Gas contends that if ENA ultimately decides to reject the contract, delay in making the decision could cause a great increase in the rejection claim filed by Florida Gas. Florida Gas asserts that it is currently engaged in several major expansion projects for its gas pipeline system and it contends that, in order not to over expand the pipeline, it must learn the extent to which ENA intends to retain the contracted for capacity. According to Florida Gas, a long delay in making the

decision may render it too late, under the construction timetable, to redesign the expansion project. As a consequence, Florida Gas maintains that it may find itself with excess capacity that has cost millions to develop, which will result in a substantial increase in the rejection claim that Florida Gas files against ENA.

Florida Gas further argues that even if ENA ultimately assumes the contract, the delay is detrimental to ENA. Florida Gas contends that because ENA is uncertain as to how long it will retain the contracts, ENA is only able to enter into short-term releases of capacity for which the rate of return is at less than the market rate and less than its contractual obligation for the reservation charges. Inasmuch as ENA's short term releases of capacity are yielding less than its contractual obligation for post-petition payments due Florida Gas, Florida Gas argues that ENA's post-petition operating losses are increasing.

Florida Gas asserts that if ENA rejects the contracts, these balances due under the agreements will become claims against the estate. Florida Gas maintains that if ENA were compelled to reject the agreements earlier, Florida Gas could then attempt to mitigate ENA's damages by re-selling the capacity on a long-term basis at a higher rate. Florida Gas argues that the longer the delay in requesting a rejection, the greater its claim will be against the ENA estate.

The Debtors contend that they have undertaken a systematic, careful review and valuation of their contracts. The Debtors assert that they must be afforded additional time to make a determination on whether to assume or reject these agreements because they need time to evaluate the executory contracts to enable them to maximize the value of their assets. The Debtors specifically reference their fiduciary duty to maximize the value of all of their assets for the benefit of their creditors. The Debtors maintain that this is a large, complex bankruptcy case, and that in the early stages of this case, the Debtors resources and efforts have been directed to stabilizing the Debtors' businesses and evaluating ways to maximize value to creditors. The Debtors maintain that ENA has taken action to substantially mitigate Florida Gas's losses under the contracts by attempting to release capacity to third-parties on a short-term basis and if successful, these arrangements benefit Florida Gas. The Debtors assert that ENA has released capacity on the Florida Gas pipeline from May 1 through September 30, 2002, assuring Florida Gas of payment of the reservation charges through that period.

The Debtors further assert that the argument by Florida Gas concerning the impact of ENA's delay in deciding whether to assume or reject the agreements on the proposed expansion by Florida Gas is disingenuous. The Debtors contend that the decision by Florida Gas to expand its pipeline was based on the demand for natural gas and its determination that there was a sufficient demand to support expansion of its pipeline. The Debtors further contend that, because ENA is neither a producer nor consumer of gas, but merely a middleman that transports gas from producer to user, it has no impact on the demand for gas. If there is a demand and ENA does not transport the gas to fill that demand, another shipper will transport the gas, thus utilizing the same capacity—in other words, the demand for capacity is not impacted by who transports the gas from producer to user.

Finally, the Debtors contend that ENA requires additional time to consider whether to assume or reject the Firm Transportation Service Agreements because FERC is scheduled to make a decision by Sep-

tember 30, 2002 concerning whether to extend its current policy which allows re-lease of firm capacity at rates above the rates set in the firm capacity agreements. The Debtors assert that once this determi-nation is made by FERC, ENA will be able to assess the potential value of its Firm Service Transportation Agreements with Florida Gas. As FERC is expected to make a determination on this issue by September 30, 2002, the Debtors have re-quested that ENA be allowed an additional two weeks after that, until October 15, 2002, to decide whether assume or reject the agreements.

■ Pursuant to 11 U.S.C. § 365(d)(2), a chapter 11 debtor-in-possession ordinari-ly has until plan confirmation to decide whether to assume or reject an executory contract. It has been observed that it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy peti-tion, continuing until the confirmation of a plan, in which to assume or reject an exec-utory contract. *Skeen v. Denver Coca-Cola Bottling Co. (In re Feyline Presents, Inc.)*, 81 B.R. 623, 626 (Bankr.D.Colo. 1988).

However, the breathing space afforded to the debtor for the assumption or rejec-tion of executory contracts is not without limits. Under § 365(d)(2), any party to an executory contract may request that the court fix a time within which the debtor must assume or reject an executory con-tract. This section of the Code is a codifi-cation of a case law remedy that was de-veloped under the prior Bankruptcy Act. 3 L. KING ET AL., COLLIER ON BANKRUPTCY, ¶ 365.04[2][b] (15th ed. rev.2000). The set-

tled rule, borrowed from equity receiver-ship practice, was that the debtor has a reasonable time within which to decide whether to assume or reject an executory contract. *Id.*

The determination of what is a reason-able time is within the bankruptcy court's discretion "in light of the circumstances of each case." *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir.1982) (per curiam). In determining what consti-tutes a reasonable time, the Second Circuit in *Theatre Holding* considered several fac-tors, including:

> 1) the damage the non-debtor will suffer beyond the compensation available un-der the Bankruptcy Code;
>
> 2) the importance of the contract to the debtor's business and reorganization;
>
> 3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and
>
> 4) whether exclusivity has terminated.

*See Theatre Holding*, 681 F.2d at 105–06; *accord In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr.S.D.N.Y.2001). As applied un-der the Code, the definition of a reason-able time should be interpreted in conjunc-tion with the broad rehabilitative purpose of chapter 11. *See In re Teligent, Inc.*, 268 B.R. at 738.

Although the Second Circuit in *Theatre Holding* considered what constituted a reasonable time to assume a non-residen-tial real property lease, and the Bankrupt-cy Code has since been amended to add a separate section that requires assumption or rejection of such leases within 60 days, *See* 11 U.S.C. § 365(d)(4),[3] the *Theatre*

---

**3.** 11 U.S.C. § 365(d)(4) provides, in relevant part, that

> if the trustee does not assume or reject an unexpired lease of nonresidential real prop-erty under which the debtor is the lessee

within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected.

*Holding* factors remain relevant to a decision of what is a reasonable time in the context of the assumption or rejection of executory contracts. *See In re Teligent, Inc.,* 268 B.R. at 738. Moreover, the Second Circuit in *South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d 755 (2d Cir. 1996), concluded that the *Theatre Holding* factors remain relevant to a consideration of a reasonable time in the context of establishing cause for an extension of time to assume or reject leases under § 365(d)(4). *South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d at 761. The Second Circuit in *Burger Boys* further noted that additional considerations under § 365(d)(4) may include the complexity of the case, the number of leases that the debtor must evaluate, and the need for a judicial determination of whether a lease exists. *Id.*

■ The additional factors, considered in *Burger Boys* in the context of nonresidential real property leases, are also relevant to a determination whether to compel assumption or rejection of an executory contract. Thus, in determining whether ENA should be compelled to assume or reject the Transportation Service Agreements, the Court considers the *Theatre Holding* factors as augmented by the additional factors set forth in *Burger Boys.*

■ The bankruptcy case before this Court is large and complex, involving thousands of executory contracts. The Debtors have been reviewing these contracts and have made determinations concerning whether to assume or reject a substantial number of the contracts. A review of those entries on the docket sheet which reflect decisions by the Debtors to either assume or reject executory contracts, evidences that the Debtors are diligently confronting the arduous task of reviewing all of these contracts. The Debtors are mindful of their fiduciary duty to maximize the value of the assets of the estates and, therefore, seek to await the FERC decision on their ability to profit from releases of capacity before making their decision. These factors indicate that the Debtors have not yet been afforded a reasonable time to decide whether to assume or reject the ENA Firm Service Transportation Agreements.

With respect to the other factors, Florida Gas argues that it will suffer consequential damages as a result of a delay by ENA in deciding whether to assume or reject the agreements because it may over expand. However, as noted by the Debtors, Florida Gas based its decision to expand on the demand for natural gas in the relevant areas which will not be impacted by ENA's decision to assume or reject. This is because regardless of whether ENA assumes or rejects the agreements, if there is a demand for the natural gas, some entity will be prepared to undertake to supply the service and utilize the pipeline capacity.

The natural gas transportation contracts are very important to ENA's business and reorganization. They may prove very profitable to ENA, if FERC determines to extend its policy and allow parties to these agreements to release the capacity at a profit. Inasmuch as FERC will not make a decision on this matter until September 30, 2002, ENA is unable to appraise the potential value of the agreements until that time.[4]

4. The Court has extended ENA's exclusive period to file a plan of reorganization until August 30, 2002, without prejudice to further extensions or reductions to this exclusive period being sought.

In considering all of these factors and the fact that ENA has attempted to mitigate Florida Gas's losses by releasing capacity, for which Florida Gas will be paid the full monthly rate for reservation of the pipeline capacity until September 30, 2002, the Court concludes that affording ENA until October 15, 2002 is a reasonable time period for ENA to determine whether to assume or reject the ENA Firm Transportation Service Agreements. The time set forth herein is without prejudice to either Florida Gas requesting an earlier termination or ENA requesting an extension if the circumstances so warrant.

### Administrative Expense Priority

Florida Gas seeks administrative priority for its claims for accrued post-petition charges (i) for the reservation of gas transportation capacity; (ii) for the actual transportation of natural gas; and (iii) for the volume balancing for transportation services.[5]

■ Section 503(b)(1)(A) of the Bankruptcy Code provides a priority for "the actual, necessary costs and expenses of preserving the estate ... for services rendered after the commencement of the case." Pursuant to section 507(a)(1) of the Bankruptcy Code, these expenses for administering the estate are afforded a first priority. Thus, expenses the debtor-in possession incurs during the reorganization effort are afforded a first priority. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984).

■ This priority is based on the premise that the operation of the business by a debtor-in possession benefits pre-petition creditors; therefore, any claims that result from that operation are entitled to payment prior to payment to "creditors for whose benefit the continued operation of the business was allowed." *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976). While *Mammoth Mart* was decided under the former Bankruptcy Act, its analysis is applicable under the Bankruptcy Code. *In re Drexel Burnham Lambert Group Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y.1991).

■ Administrative expenses are afforded this priority to facilitate the reorganization effort by encouraging third-parties, who might be reluctant to deal with a debtor-in-possession, to transact such business. *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986) *citing, Mammoth Mart*, 536 F.2d at 954. Otherwise, absent this incentive, the third-parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors. *Id.*

■ Nevertheless, in light of the bankruptcy goal of providing equal distribution of a debtor's assets to all creditors, priorities are narrowly construed. *Amalgamated Ins. Fund*, 789 F.2d at 100. Strictly construing the terms "actual" and "necessary" minimizes administrative expense claims thereby preserving the estate to benefit all creditors. *Drexel*, 134 B.R. at 488. If claims not intended to have priority are afforded such, the value of the priority for those creditors Congress intended to prefer would be diluted. *Mammoth Mart*, 536 F.2d at 953. It is

---

5. Florida Gas also argued that it was entitled to timely payment of its full claim for reservation charges, pursuant to 11 U.S.C. § 365(d)(10), as payment due on an unexpired lease of personal property. The Debtors disputed this contention and maintained that the agreements were not leases of personal property but, rather, were service agreements. At the Hearing, Florida Gas conceded the inapplicability of § 365(d)(10) to the agreements at issue.

important to note that once a debtor is in bankruptcy, an ordinary contract action between a provider of goods or services and the solvent recipient of such goods or services becomes a contest among the debtor's creditors to share in the distribution of the debtor's assets. *General American Transportation Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1133 (10th Cir.1993). Any priority given to one creditor is done to the detriment of other creditors. *In re Patient Education Media, Inc.,* 221 B.R. 97, 101 (Bankr.S.D.N.Y.1998). The focus on allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss. *In re R.H. Macy & Co., Inc.,* 170 B.R. 69, 78 (Bankr. S.D.N.Y.1994). Thus, a court looks to the actual benefit to the estate not the loss sustained by a creditor. *In re CIS Corp.,* 142 B.R. 640, 642 (S.D.N.Y.1992). The claimant has the burden of establishing entitlement to the priority. *Drexel,* 134 B.R. at 489.

■ An expense will be accorded administrative status

1) if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and

2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

*Amalgamated Ins. Fund,* 789 F.2d at 101; *Mammoth Mart,* 536 F.2d at 954.

■ The services performed by the claimant must have been "induced" by the debtor-in-possession, not the pre-petition debtor. *Jartran, Inc.,* 732 F.2d at 587, citing, *Mammoth Mart,* 536 F.2d at 954. Considering inducement by the debtor-in-possession to be a crucial element comports with the policy reason for allowing the priority, which is to encourage third-parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors. *Jartran Inc.,* 732 F.2d at 588, 590. Thus, benefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim priority as it would be contrary to this policy reason for allowing the priority. *Jartran, Inc.,* 732 F.2d at 590.

■ Where a "debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *Patient Education Media,* 221 B.R. at 101, *quoting, NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *see also In re Continental Airlines, Inc.,* 146 B.R. 520, 526 (Bankr.D.Del.1992). Therefore, the claims of third-parties who are induced to supply goods or services to a debtor-in-possession pursuant to a contract that has not been rejected are afforded administrative priority to the extent that the consideration supporting the claim was supplied during the reorganization. *Jartran, Inc.,* 732 F.2d at 588.

■ A debtor must derive a benefit under a contract in order for its claim to be accorded administrative expense priority. *Macy,* 170 B.R. at 77–78. The benefit must run to the debtor-in-possession. *Continental Airlines,* 146 B.R. at 526. If the consideration was supplied pre-petition, the claim is not entitled to administrative priority even where the right to payment arises post-petition. *Jartran, Inc.,* 732 F.2d at 587.

■ The inclusion of the words "actual" and "necessary" in § 503(b)(1)(A) requires that the estate receive a "real bene-

fit from the transaction." *Drexel*, 134 B.R. at 488. A potential benefit is not sufficient. *Id.* In order for a creditor's claim to be entitled to administrative status, there must be actual use of the creditors property by the debtor-in-possession. *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr. N.D.N.Y.1989). Actual use confers a "concrete benefit on the estate" thereby entitling a claimant to an administrative expense claim. *Id.* Where only part of the leased property is used by a debtor-in-possession, an administrative claim priority is accorded only to the portion used. *See Patient Education Media*, 221 B.R. at 102 (collecting cases).

■ The mere possession of the claimant's property by the debtor does not warrant administrative claim status. *Mid Region Petroleum*, 1 F.3d at 1133. The "option" to use the property that is inherent in mere possession is considered not sufficient to establish benefit to the estate if the debtor does not actually use the property. *Patient Education Media*, 221 B.R. at 102. The potential benefit to an estate provided by storage of a creditor's property as available inventory for potential customers is not the equivalent of actual use. *ICS Cybernetics, Inc.*, 111 B.R. at 38. There must be a concrete, discernible benefit from actual use because a speculative benefit or the mere potential for benefit is not enough to warrant an administrative claim priority. *CIS Corp.*, 142 B.R. at 644. *See also, Macy*, 170 B.R. at 78 (noting that an option or potential to use or benefit from property does not equal benefit to the estate); *Mid Region Petroleum*, 1 F.3d at 1133 (noting that although the debtor is afforded time, while in possession of the property, to deliberate and consider whether to assume or reject the lease, and thus allowed the opportunity to decide whether to resume its business or sell the assets to a third-party, that opportunity,

though advantageous is not the type of benefit that warrants elevation of the claim to administrative priority); *In re Kessler*, 23 B.R. 722, 724 (Bankr.S.D.N.Y.1982), *aff'd, Amalgamated Ins. Fund v. Kessler*, 55 B.R. 735 (S.D.N.Y.1985) (noting that administrative claims are assessed based on actual value received by the estate and a claim that merely has potential for benefit to the estate "upon the happening of other events" is not entitled to administrative priority).

■ With respect to an executory contract, the focus is "on whether the debtor *used* the nondebtor's property in the ordinary course of its business, and continued to receive and accept the nondebtor's performance." *Patient Education Media*, 221 B.R. at 102 (emphasis in the original). Making entitlement to an administrative claim depend on actual use rather than mere possession recognizes the need to afford the debtor time to make a reasoned decision on whether to assume or reject the contract "without exposing the estate to administrative liability solely on account of the delay." *Id.*

■ Nevertheless, actual use does not require physical use by the debtor itself but may include subleasing of the property by the debtor, *ICS Cybernetics, Inc.*, 111 B.R. at 40, at least where it receives an income stream from the sublease during the reorganization. *See CIS Corp.*, 142 B.R. at 643–44 (finding claim not entitled to administrative status because sublessee had pre-paid lease payments and although equipment was used during reorganization, the benefit was to the pre-petition entity as the consideration was paid pre-petition).

Florida Gas seeks payment of the charges that have accrued post-petition under the transportation agreements, including the costs of reservation, usage charges, and volume balancing for trans-

portation services, as an administrative expense.

The Debtors assert that Florida Gas will receive payment for the reservation charges and use charges attributable to any actual post-petition use of the Florida Gas pipeline on an administrative priority basis. However, the Debtors contend that because the chapter 11 estates received no benefit from having the pipeline capacity available when it was not used, claims based on reservation charges during the period where there was no use are not entitled to administrative expense priority.

With respect to the ENA agreements, the Debtors acknowledge that Florida Gas is entitled to payment for transportation charges for the post-petition period when ENA transported natural gas on the pipeline on an administrative priority basis. In addition, during the period of all of the releases under the ENA or EES agreements, Florida Gas is being paid for transportation charges by the entities who have actually used the pipeline capacity to transport natural gas. Thus, the dispute between the parties concerns whether the claims based on the reservation charges are entitled to administrative expense priority.

Since May 1, 2002, Florida Gas has received the full monthly reservation charges under the ENA agreements. Post-petition, prior to May 1, releases of the pipeline capacity under the ENA agreements resulted in Florida Gas receiving 40% of its monthly reservation charges for the period from January to March 2002, and 55% of the reservation charges for April 2002. Post-petition, for the pipeline capacity made available to EES through the release by Peoples, Florida Gas has received 100% of its reservations charges from payments made by Peoples.

■ With respect to the Florida Gas claims against ENA, the Court finds that during the period when there was no usage of the pipeline capacity by either actual transportation of natural gas by ENA on the pipeline or through the release of the pipeline capacity to a third-party, there was no concrete benefit conferred upon ENA's estate. *ICS Cybernetics, Inc.*, 111 B.R. at 36. Thus, the claim asserted by Florida Gas for this period is not entitled to administrative expense priority.

ENA's potential to benefit from the availability of capacity does not entitle Florida Gas to an administrative expense priority for its claim based on a period when ENA had a right to use the pipeline by transporting gas or releasing capacity, but did not. Merely having the pipeline capacity available with the option to use or release the capacity or otherwise potentially benefit from having the capacity available is not the type of benefit that warrants administrative expense priority for the contract claim. *See Mid Region Petroleum*, 1 F.3d at 1133. Rather, it is the concrete benefit received by ENA from the actual use of the pipeline, by either itself or by releasing such capacity to a third-party, that would warrant elevating the contract claim to administrative priority. *ICS Cybernetics, Inc.*, 111 B.R. at 36. Where there was no actual use of the pipelines, however, the options afforded ENA are not sufficient to confer the type of concrete benefit required under an administrative claim analysis. *In re Enron Corp., et al.*, 279 B.R. 79, 89–90 (Bankr. S.D.N.Y.2002). Moreover, ENA's attempts to release capacity were not sufficient to elevate the claim by Florida Gas to administrative expense priority unless those attempts were successful. *Id.* Any attempt by ENA to release capacity is merely an attempt to draw potential value in compliance with its fiduciary duty and unless the attempt is successful, the estate does not derive a benefit.

Florida Gas argues that ENA is gambling on the potential to profit from the pipeline capacity and as such, ENA should be obligated to pay the reservation charges for the available capacity for the full term of the agreements. However, this alleged gambling or speculation by ENA is merely a potential or option to benefit and as such is too attenuated to confer administrative priority status on their claim. *Enron Corp.*, 279 B.R. at 90–91. Actual benefit is not conferred until ENA uses the pipeline capacity by transporting gas or releasing the capacity to a third-party. *Id.*

Nor does the fact that ENA realized profit from certain periods of time when it released capacity for use by third-parties entitle Florida Gas to receive full reservation charges for all periods covered by the transportation agreements. *Enron Corp.*, 279 B.R. at 90–91. As previously noted, priorities are strictly construed and only claims based on actual usage that result in benefit to a debtor-in-possession are entitled to administrative priority. Moreover, when there is partial use of a creditor's property, administrative priority status only applies to a claim based on the portion used. Florida Gas is being paid for reservation charges during the period that there was usage by ENA's release of pipeline capacity.

Florida Gas also contends that benefit to ENA from the transportation agreements is evidenced by ENA's effort to retain the contract rights for an additional time to determine whether it wants to assume or reject them. This contention, however, fails to consider the need to afford a debtor the opportunity to make a reasoned decision on whether to assume or reject an executory contract. *Patient Education Media*, 221 B.R. at 102. In fact, under the Bankruptcy Code, a debtor is afforded until confirmation of a plan to determine

whether to assume or reject an executory contract, unless the Court orders otherwise on request of a party to such contract. *See* 11 U.S.C. § 365(d)(2). As previously noted, ENA opposes the motion by Florida Gas to compel ENA to assume or reject the agreements at this time to await FERC's decision concerning allowance of profit from releases, after which ENA can assess its potential to ultimately derive actual benefit for the estate from the release of capacity.

Thus, the claims by Florida Gas, for reservation charges for the period during which there was no use of the pipeline capacity by ENA, either by its transporting natural gas on the pipeline or releasing capacity to third-parties, are not entitled to priority as an administrative expense. The claims for reservation charges of pipeline capacity for periods during which ENA transported natural gas on the pipeline or released pipeline capacity to third-parties are entitled to administrative priority "only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Amalgamated Ins. Fund*, 789 F.2d at 101; *Mammoth Mart*, 536 F.2d at 954.

■ ENA's actual use of the pipeline capacity to transport natural gas warrants administrative priority for the claim based on reservation charges for the period during which ENA transported natural gas, in accordance with the contract rate and relevant tariffs. For the periods during which ENA released capacity at less than the rate of its contractual obligations under the agreements with Florida Gas, ENA only benefitted to the extent that any third-party paid for reservation charges, which for January through March was 40% of the reservation charges and for April was 55% of the reservation charges. Flor-

ida Gas has received these amounts directly from the third-parties. No further benefit was conferred upon the estate in the operation of its business and, therefore, any claims in excess of these amounts are not entitled to administrative expense priority.

With respect to the claim asserted by Florida Gas against EES, inasmuch as Florida Gas has been paid 100% of the reservation charges due, its claim against EES based on the reservation charges is not entitled to an administrative expense priority. An administrative priority is afforded for "the actual, necessary costs and expenses of preserving the estate." The terms "actual" and "necessary" are strictly construed. It cannot be a necessary expense for preserving the estate for EES to pay Florida Gas for a charge for which Florida Gas has already received payment. Even if Florida Gas is correct in its assertion that EES is not released from its own obligation to pay these reservation charges, such obligation would not rise to the level of an administrative expense claim.

For the periods during which ENA released capacity to a third-party at the same rate as provided for in the agreement or at a rate higher than its contractual obligation, ENA received the benefit of its bargain. Florida Gas has also received the benefit of its bargain with respect to that usage by receipt of the contractually owed payments. It is not disputed that Florida Gas is receiving payments for the amounts due under the relevant agreements from third-parties. It follows that because Florida Gas has been paid in full, regardless of the theory upon which Florida Gas claims that ENA remains obligated for these amounts, the claims cannot be viewed as a necessary expenses to preserve ENA's estate. Therefore, these claims are not entitled to an administrative expense priority.

## CONCLUSION

The Debtors are afforded until October 15, 2002 to assume or reject the ENA Firm Transportation Service Agreements. The Court finds that under the current circumstances of this case, that is a reasonable time period to make the determination. This time frame is without prejudice to either Florida Gas requesting an earlier termination or ENA requesting an extension of time if the circumstances should in the future warrant such relief.

The claims by Florida Gas based on reservation charges owed for the availability of pipeline capacity that was neither used to transport natural gas nor released to a third-party are not entitled to administrative expense priority. The claims against ENA for reservation charges and use charges attributable to any actual post-petition use of the Florida Gas pipeline by ENA to transport natural gas on the pipeline are entitled to an administrative expense priority. Any claim against ENA or EES based on the release of pipeline capacity to a third-party is only entitled to an administrative priority to the extent that the debtor-in-possession benefitted by that use. As Florida Gas has already received payment for the release of pipeline capacity for which ENA and EES benefitted, the request for administrative expense priority status for that claim is denied.

Counsel for the Debtors is directed to settle an order on 3 days' notice, consistent with this Memorandum Decision.